# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : No. 27 EAP 2013 |
| | : |
| Appellant | : Appeal from the Judgment of the Superior |
| | : Court entered on July 12, 2012 at No. |
| | : 2032 EDA 2010 reversing and remanding |
| v. | : the Judgment of Sentence entered on |
| | : March 16, 2010 in the Court of Common |
| | : Pleas of Philadelphia County, Criminal |
| JAMES R. MOORE, | : Division, at Nos. CP-51-CR-0009849- |
| | : 2008, MC-51-CR-0019450-2008, MC-51- |
| Appellee | : CR-0019451-2008 and MC-51-CR- |
| | : 0019452-2008 |
| | : |
| | : ARGUED:  March 12, 2014 |

## OPINION

**MADAME JUSTICE TODD**                    **DECIDED:  October 30, 2014**

In this appeal by allowance, we consider whether a conviction for possession of an instrument of crime ("PIC") may be sustained when a defendant has been otherwise acquitted of related offenses involving the use of that instrument of crime, herein, a firearm.  For the reasons that follow, we hold that a defendant's conviction of PIC may indeed stand under such circumstances.  Thus, we vacate the Superior Court's order reversing Appellee James R. Moore's PIC conviction, and remand to the trial court for reinstatement of Appellee's judgment of sentence.

On April 13, 2008, at approximately 2:30 a.m., Appellee became involved in an altercation with Gerald Stewart at a neighborhood "speakeasy"[1] located at 5915 West Girard Avenue in Philadelphia. Shortly thereafter, a gunfight erupted between Appellee and various other patrons, during which Appellee, Stewart, and Vincent Dennis were shot, and Reginald Mailey was killed.

Appellee was arrested in connection with the incident and charged with murder, attempted murder, aggravated assault, simple assault, reckless endangerment, three violations of the Uniform Firearms Act[2] ("VUFA"), and PIC. The aggravated assault, simple assault, and reckless endangerment charges, as well as two of the VUFA charges, were ultimately *nolle prossed*, and, on January 11, 2010, the case proceeded to a jury trial on the murder, attempted murder, and PIC charges, as well as Appellee's remaining VUFA charge of persons not to possess firearms. The trial was bifurcated, with the jury hearing evidence related to the VUFA charge after it issued its verdict on the other charges.

During the first portion of Appellee's trial, the Commonwealth presented evidence supporting its theory that Appellee initiated the shooting. Specifically, the Commonwealth's evidence indicated that, after his initial argument with Stewart, Appellee left the speakeasy, retrieved a handgun from his car, and returned to the establishment, where he began firing and shot Stewart, Dennis, and Mailey. According to the Commonwealth, after Appellee began shooting, Stewart discovered a gun on the floor and returned fire, shooting Appellee in the left thigh and right knee. The Commonwealth claimed that Appellee subsequently left the speakeasy while still

---

[1] This speakeasy has been eloquently described by the Superior Court as "a virtual farrago of vice," which "provided drugs, alcohol and prostitutes to its patrons." Commonwealth v. Moore, 49 A.3d 896, 897 (Pa. Super. 2012).
[2] 18 Pa.C.S.A. § 6105.

possessing his gun, drove away, and, minutes later, was stopped by police, who recovered the gun from the front passenger seat of his car. Appellee, by contrast, testified at trial that he retrieved the gun from inside the speakeasy after the fight began, and that he returned fire in self-defense.

The jury acquitted Appellee of the murder and attempted murder charges, but convicted him of PIC. In the second phase of the trial, after hearing evidence pertaining to Appellee's VUFA charge, the jury convicted Appellee of persons not to possess a firearm. He received consecutive sentences of 2½ to 5 years incarceration for his PIC conviction and 5 to 10 years imprisonment for his persons not to possess firearms conviction. Appellee filed a post-sentence motion for reconsideration of sentence, which was denied by operation of law, and he appealed his judgment of sentence to the Superior Court, asserting the evidence was insufficient to sustain his PIC and persons not to possess firearms convictions because of the jury's acquittal on the charges of murder and attempted murder.[3]

---

[3] Appellee framed this issue as a sufficiency challenge, as several defendants challenging inconsistent jury verdicts have done in past cases. See, e.g., Commonwealth v. Gonzalez, 527 A.2d 106 (Pa. 1987); Commonwealth v. Miller, 35 A.3d 1206 (Pa. 2012). However, the United States Supreme Court has recognized that a court's review of the evidentiary sufficiency of a particular conviction is separate from its review of inconsistent verdicts, as sufficiency review entails an assessment of whether the evidence was sufficient for the jury to convict a defendant of a particular offense and is "independent of the jury's determination that evidence on another count was insufficient." United States v. Powell, 469 U.S. 57, 67 (1984). Thus, the Supreme Court has explicitly cautioned that sufficiency review "should not be confused with the problems caused by inconsistent verdicts." Id. Accordingly, in line with the high Court, we emphasize that such challenges are more appropriately characterized as challenges to the inconsistency of the jury's verdict, rather than to the sufficiency of the evidence to sustain a particular conviction.

In a unanimous published opinion, the Superior Court affirmed Appellee's VUFA conviction,[4] but reversed his PIC conviction and remanded for re-sentencing, concluding that, "since the jury acquitted Appell[ee] of committing any crime with the firearm that he possessed, his conviction for PIC is infirm." Moore, 49 A.3d at 898. In reaching this conclusion, the Superior Court relied principally upon our decision in Gonzalez. Therein, the appellant killed an individual with a shotgun, but asserted that he did so in self-defense. Similar to the instant case, the jury acquitted the appellant of murder and manslaughter, but nevertheless convicted him of PIC. The Superior Court herein reasoned that we determined the evidence was insufficient to sustain the appellant's PIC conviction in Gonzalez because we found that the jury's acquittal reflected the jury's acceptance of the appellant's self-defense claim, and no other evidence existed to support a finding that the appellant possessed his gun with the intent to employ it criminally. Applying that logic to the instant case, the Superior Court concluded that, even assuming *arguendo* that Appellee retrieved the gun from his car rather than finding it at the speakeasy, because the offense of PIC requires a defendant to have the intent to employ a weapon or a firearm criminally, and because Appellee was acquitted of committing any crime with his firearm, Appellee lacked the requisite criminal intent to sustain his PIC conviction.[5]

---

[4] Specifically, the Superior Court found the evidence was sufficient to sustain this conviction because Appellee stipulated that his criminal history rendered him a person prohibited from possessing a firearm, and police discovered Appellee in possession of the firearm in his car.

[5] In so holding, the Superior Court stated that its ruling "flows from the elements of [PIC], which unequivocally require that the weapon or firearm be employed criminally." Moore, 49 A.3d at 899. However, we note that the PIC statute requires only that an individual *intended* to employ the weapon or firearm criminally, and does not contain an element requiring the actual criminal employment of the weapon or firearm. 18 Pa.C.S.A. § 907(a) ("A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.").

While the Commonwealth argued that Appellee's PIC conviction should stand based upon Pennsylvania's well settled acceptance of inconsistent jury verdicts, the Superior Court rejected this contention, finding that principle inapplicable in the instant case pursuant to our decision in Commonwealth v. Magliocco, 883 A.2d 479 (Pa. 2005) (finding the evidence insufficient to convict an appellant of ethnic intimidation because he was acquitted of terroristic threats, where the latter was a predicate offense at the time of the appellant's conviction). Specifically, the Superior Court interpreted Magliocco as standing for the general proposition that, "where the offense in question require[s] that the defendant commit a crime and where the trier of fact specifically acquitted the defendant of the crime that was the necessary element of the offense for which the defendant was convicted," the general rule permitting inconsistent verdicts is inapplicable. Moore, 49 A.3d at 902.

Following the Superior Court's decision, the Commonwealth filed a petition for allowance of appeal with this Court, and we granted review to consider whether a defendant's conviction for PIC may stand when that defendant was acquitted of the related offenses involving the use of that instrument of crime;[6] whether the Superior Court contravened this Court's precedent by extending Magliocco beyond its statutory context; and whether we should clarify or overrule Gonzalez, which, as the Commonwealth noted, "has been interpreted in this and other cases as forbidding a conviction of [PIC] when the [Appellee] is acquitted of the non-weapons charges."[7] See

---

[6] Our review is limited to inconsistent verdicts in cases where a defendant was convicted of PIC, but was acquitted of related offenses involving the use of that instrument of crime. No one challenges the general doctrine that juries are permitted to reach verdicts that are inconsistent.

[7] *Amicus Curiae* Defender Association of Philadelphia filed a brief on behalf of Appellee challenging the constitutionality of a PIC conviction in cases where a defendant acted in self-defense on the basis that such a conviction violates a citizen's right to bear arms in self-defense under Article I Section 21 of the Pennsylvania Constitution. Because (continued…)

Commonwealth v. Moore, 68 A.3d 327 (Pa. 2013) (order).  As these issues involve pure questions of law, our standard of review is *de novo*, and our scope of review is plenary.  Miller, 35 A.2d at 1208 n.4.

Preliminarily, the Commonwealth notes that this Court has repeatedly held that an inconsistent verdict does not by itself render evidence insufficient to sustain a particular conviction, and that a jury's acquittal on a charge "may not be interpreted as a specific finding in relation to the evidence."  Appellant's Brief at 12 (citing Miller, 35 A.3d at 1213 (holding that appellant's "acquittal of the predicate offense of robbery does not necessitate the vacatur of his conviction of second-degree murder"); Commonwealth v. Campbell, 651 A.2d 1096, 1100 (Pa. 1994) (accepting inconsistent verdicts with respect to co-defendants in a conspiracy case); Commonwealth v. Carter, 282 A.2d 375, 377 (Pa. 1971) (upholding appellant's aggravated assault and battery conviction despite the fact that he was acquitted of separate count of simple assault and battery)).  Thus, according to the Commonwealth, the Superior Court's decision to reverse Appellee's PIC conviction on the basis that the verdict was inconsistent with his murder and attempted murder acquittals contravenes our established precedent and runs afoul of the basic maxim that an acquittal shows nothing more than the fact that the jury was "not convinced of the defendant's guilt."  Appellant's Brief at 12 (quoting Carter, 282 A.2d at 377).

The Commonwealth further contends that, in declining to apply the general rule allowing inconsistent verdicts, the Superior Court improperly relied upon Magliocco and wrongly extended it beyond its unique statutory context.  Specifically, the

---

(…continued)

neither party raises this issue and because *amici* are not permitted to raise issues that have not been preserved by the parties, Holt v. LRC, 67 A.3d 1211, 1225 n.12 (Pa. 2013), we will not address this claim.

Commonwealth notes that, in Miller, we explicitly limited the Magliocco holding to the ethnic intimidation statute — which contains an element requiring the commission of a predicate offense — noting that Magliocco is "not generally applicable to other offenses." Appellant's Brief at 17 (quoting Miller, 35 A.3d at 1213). The Commonwealth also suggests that the Superior Court mistakenly relied upon Gonzalez in reaching its decision, asserting that, in that case, we held the evidence was insufficient to sustain the appellant's conviction not because of the jury's acquittal, but because the evidence itself indisputably established self-defense. However, in the alternative, the Commonwealth argues that, even if we were to find that Gonzalez did, in fact, hold that evidence is insufficient to support a conviction of PIC in circumstances where the jury acquits the appellant of the other offenses for which he is charged, that decision is erroneous and should be overruled.

In response, Appellee maintains that the jury's acquittal on his murder charges evinces the jury's acceptance of his self-defense claim. Thus, Appellee argues that, because he was acting in self-defense, the Commonwealth failed to establish the requisite criminal intent to sustain his PIC conviction, and, therefore, the Superior Court properly overturned the conviction. In further support, Appellee cites to this Court's decision in Commonwealth v. Watson, 431 A.2d 949 (Pa. 1981), wherein we held that an appellant who suffered from battered-spouse syndrome acted in self-defense when she killed her common law husband, that no other evidence was present to establish criminal intent, and, thus, that the appellant lacked the criminal intent necessary to sustain her PIC conviction.

With these arguments in mind, we begin our analysis. Initially, the Superior Court correctly observed that, in our decision in Gonzalez, authored by former Justice Larsen, we refused to uphold the inconsistent verdicts at issue, which concerned a

defendant who, similar to Appellee, was acquitted of murder and voluntary manslaughter, but was nevertheless convicted of PIC. Specifically, the defendant in Gonzalez owned a small variety store in Philadelphia and threatened two gang members who attempted to steal a radio from one of his customers, forcing them to leave, and warning that he was "going to kill somebody." Gonzalez, 527 A.2d at 107. Minutes later, one of the men returned with 15 to 20 gang members, and the defendant shot and killed him from the doorway of his store. Although the victim was unarmed, the defendant asserted that the victim stated "I'm going to shoot your butt" and reached into his jacket for a black, shiny object, which the defendant claimed prompted him to act in self-defense. The jury convicted the defendant of PIC, but acquitted him of murder and voluntary manslaughter.

On appeal, relying principally on our decision in Watson,[8] we concluded that the defendant did not commit a crime with his firearm because he acted in self-defense, and that, as a result, his PIC conviction must be reversed. Even though Watson concerned a sufficiency review of the defendant's multiple convictions and not a review of inconsistent verdicts, we nevertheless relied on its rationale in Gonzalez and concluded that "Appellant did not commit a crime with the shotgun" — an apparent reference to his homicide acquittal — and "[t]hus, the jury could not infer from the killing . . . that appellant possessed intent to employ the shotgun criminally." Gonzalez, 527 A.2d at 108. We further determined that the defendant's statement that he was "going to kill

---

[8] As we discuss further below, in Watson, we reviewed the sufficiency of the evidence to sustain the defendant's convictions for voluntary manslaughter and possession of a concealed weapon. We found that the Commonwealth failed to present sufficient evidence to disprove the defendant's self-defense claim; that she necessarily acted in self-defense; and that, therefore, she lacked the requisite criminal intent to sustain her conviction for carrying a concealed weapon. Watson, 431 A.2d at 953. Importantly, we reached our conclusion that the defendant acted in self-defense *based upon the evidence adduced at trial*, rather than by making an inference from a jury's acquittal.

somebody" was "consistent with an expression of [the defendant's] preparedness to kill *in self defense* (which is what the jury determined he did in this case)." Id. (emphasis original). Such reasoning reflects that the Court inferred from the defendant's acquittal that the jury believed he killed in self-defense and, thus, lacked criminal intent relevant to his PIC conviction — without conceding that doing so conflicted with the long line of cases disapproving such jury inferences.[9]

---

[9] Justice Baer opines in his Concurring Opinion that the Gonzalez Court's basis for reversal was the "lack of sufficient evidence to sustain the [defendant's] PIC conviction," not an inference from his homicide acquittal. Concurring Opinion (Baer, J.), at 4; see also id. at 8. Respectfully, we disagree. As noted above, the Gonzalez Court twice referenced the jury's determination. Furthermore, while Justice Baer correctly points out that this Court engaged in a sufficiency review in Gonzalez, our review in that regard was focused on whether the jury could have inferred criminal intent from the defendant's statement during his *initial altercation* with the victim, in response to the Commonwealth's argument that the jury could have inferred criminal intent from that exchange. Gonzalez, 527 A.2d at 108. Admittedly, Gonzalez's terse, six-paragraph analysis is, as Justice Saylor implies, not a model of clarity. See Concurring Opinion (Saylor, J.), at 2 ("[Gonzalez is subject to multiple, reasonable interpretations"). Nevertheless, in our view, the Gonzalez Court's reliance on an inference from the jury acquittal predominates. Indeed, in his dissenting opinion in Gonzalez, Justice McDermott described the majority opinion as "grounded in a belief that appellant's [PIC] conviction is invalid because a homicide conviction was not accomplished," rather than because there was insufficient evidence to render the appellant guilty of PIC. Id. at 109 (McDermott, J., dissenting). Moreover, courts have consistently interpreted Gonzalez in this fashion. See Moore, 49 A.3d at 899 (noting the Gonzalez Court's observation that the jury's acquittal "reflected an acceptance of [self-defense]," and stating that "since Gonzalez was not guilty of committing a crime with his firearm, he could not, as a matter of law, have intended to employ that item criminally"); In re A.C., 763 A.2d 889, 891 (Pa. Super. 2000) (stating "a conviction for PIC cannot stand if the appellant is acquitted on the underlying charge on the basis of self-defense," citing Gonzalez); Commonwealth v. Foster, 651 A.2d 163, 166 n.6 (Pa. Super. 1994) (describing Gonzalez as holding that "evidence was insufficient to support conviction for possession of an instrument of crime where defendant acted in self-defense" even though the jury in Gonzalez did not expressly find that Gonzalez acted in self-defense); Weston, 749 A.2d at 461 (stating that "[a]s this Court explained in Gonzalez, . . . the appellant could not be convicted of PIC, since he was acquitted of the underlying killing on the basis of self-defense"); Commonwealth v. Naranjo, 53 A.3d 66 (Pa. Super. 2012) (citing Gonzalez as support (continued…)

Because Gonzalez supports the reversal of a defendant's conviction for PIC where, as here, the defendant raises a self-defense claim and is acquitted on other related charges involving the use of that instrument of crime, the Superior Court reasonably found that case was controlling herein. Nevertheless, as the Commonwealth notes, Gonzalez is in substantial tension with the line of cases which overwhelmingly permit inconsistent verdicts in a variety of contexts, as we discuss below. As a result, we accept the Commonwealth's invitation to revisit the validity of that decision.

Federal and Pennsylvania courts alike have long recognized that jury acquittals may not be interpreted as specific factual findings with regard to the evidence, as an acquittal does not definitively establish that the jury was not convinced of a defendant's guilt. Rather, it has been the understanding of federal courts as well as the courts of this Commonwealth that an acquittal may merely show lenity on the jury's behalf, or that "the verdict may have been the result of compromise, or of a mistake on the part of the jury." United States v. Dunn, 284 U.S. 390, 394 (1932); see also Carter, 282 A.2d at 376. Accordingly, the United States Supreme Court has instructed that courts may not make factual findings regarding jury acquittals and, thus, cannot "upset" verdicts by "speculation or inquiry into such matters." Dunn, 284 U.S. at 394.

It is because of the inability to ascertain the rationale behind a jury's decision to acquit a defendant that the United States Supreme Court has proclaimed that "[c]onsistency in the verdict is not necessary," expressly holding that a defendant may not challenge his conviction on one count when it is inconsistent with the jury's verdict of

_____

(…continued)

for the proposition that "when a defendant is acquitted, based on self-defense, of the crimes with which he is charged and there is no other evidence of criminal intent to employ the weapon, he cannot be convicted of PIC").

acquittal on another count.  Id. at 393.  This principle was first articulated by the United States Supreme Court in the 1930s in Dunn, and was later reaffirmed by the Court in Powell, wherein the Court — noting that "[t]he rule established in Dunn v. United States has stood without exception in this court for 53 years" — rejected an appellant's request to adopt an exception to Dunn in cases where a defendant is acquitted of a predicate offense, but convicted of the compound offense.  Powell, 469 U.S. at 69.

We explicitly endorsed Dunn's holding and rationale in Carter, wherein we upheld an appellant's aggravated assault and battery conviction despite the fact that the appellant had been acquitted on a separate count of simple assault and battery, a logical inconsistency.  282 A.2d at 377.  In so doing, we rejected the notion that an acquittal may be interpreted as a specific finding of innocence, and noted, consistent with Dunn, that "[t]he most that can be said in such cases is that the verdict shows that either in the acquittal or the conviction the jury did not speak their real conclusions, but that does not show that they were not convinced of the defendant's guilt."  Id. at 377 (internal quotation marks omitted).

In a series of cases following Carter, we continued to embrace the principle that juries may reach inconsistent verdicts, along with its corollary that we may not interpret a jury acquittal as a specific factual finding with regard to the evidence.  See Commonwealth v. (John) Reed, 326 A.2d 356, 358 n.2 (Pa. 1974) (logical inconsistency in defendant's conviction of second-degree murder and aggravated robbery and acquittal of conspiracy did not justify a reversal); Commonwealth v. Strand, 347 A.2d 675, 676 (Pa. 1975) (upholding defendant's second-degree murder conviction for shooting and killing her victim despite the fact that she was acquitted of all VUFA charges associated with her use of that firearm); Commonwealth v. Tallon, 387 A.2d 77, 82-83 (Pa. 1978) (opinion in support of affirmance) (upholding defendant's voluntary

manslaughter and robbery convictions even though the defendant was acquitted of felony murder); Commonwealth v. Gravely, 404 A.2d 1296, 1301 (Pa. 1979) (plurality) (declining to reverse defendant's second-degree murder conviction, which defendant claimed was inconsistent with jury's inability to reach a verdict with respect to his rape charge, based upon longstanding principle permitting inconsistent verdicts); Campbell, 651 A.2d at 1101 (applying Dunn and Powell to approve inconsistent verdicts reached as to multiple defendants charged with conspiracy in a joint trial); Commonwealth v. Weston, 749 A.2d 458, 463 (Pa. 2000) (concluding that, where defendant asserted he acted in self-defense and was convicted of voluntary manslaughter rather than murder, the defendant's voluntary manslaughter conviction did not negate the criminal intent necessary to sustain his PIC conviction). Most recently, two years ago, in Miller, we held that the defendant's robbery acquittal did not necessitate vacating his second-degree murder conviction, despite the fact that the verdicts appeared inconsistent, reaffirming "the long-standing and well-established principle that consistency in a verdict is not required" and our refusal "to speculate upon the nature of the jury's deliberations." Miller, 35 A.3d at 1213.

Aside from Gonzalez, three relatively recent decisions from this Court — Magliocco, Commonwealth v. (Richard) Reed, 9 A.3d 1138 (Pa. 2010), and Watson — have been interpreted as exceptions to these long-standing principles. However, as we discuss below, properly understood, they involve largely idiosyncratic sufficiency or grading challenges that, critically, do not entail jury inferences and so are not in conflict with the principle permitting inconsistent verdicts or its corollary that factual findings may not be inferred from a jury's acquittal.

First, in Magliocco, we addressed a challenge to the evidentiary sufficiency of a defendant's ethnic intimidation conviction. We agreed the conviction could not stand

because the defendant was acquitted of terroristic threats, which was a predicate offense to ethnic intimidation at the time of the defendant's conviction. Specifically, the Crimes Code provided at that time that a defendant is guilty of ethnic intimidation "if, with malicious intention toward the race . . . of another individual or group of individuals, he commits an [enumerated] offense," including terroristic threats. 18 Pa.C.S.A. § 2710(a) (1998). We interpreted the express statutory language of Section 2710(a) and concluded that, because the jury acquitted the defendant, it essentially found that the defendant did not "commit" terroristic threats, which was a specific element of the crime and the only potentially applicable predicate offense in the defendant's case, and so the evidence was insufficient to sustain the defendant's ethnic intimidation conviction. Magliocco, 883 A.2d at 493. It was the fact of the jury's acquittal — not any factual inference drawn from the acquittal — and the statutory elements that drove our discussion.[10] As we later explained in Miller, our holding in Magliocco "was grounded in the delineation of the elements of ethnic intimidation set forth in the text of that statute," and, thus, was not generally applicable to convictions under other statutes. Miller, 35 A.3d at 1213. Accordingly, to the extent the Superior Court below relied upon Magliocco as support for its conclusion that inconsistent verdicts are grounds for reversal in cases where a defendant is convicted of PIC, but acquitted of related offenses involving the use of that instrument of crime, such reliance was misplaced.

Next, in (Richard) Reed, we addressed the proper grading of a defendant's attempted unlawful contact with a minor conviction when that defendant was acquitted

---

[10] Notably, we explained that a defendant may be found to have "committed" an enumerated predicate offense for purposes of the ethnic intimidation statute without being formally convicted of that offense. Magliocco, 883 A.2d at 492. However, we held that where, as in that case, the defendant was separately charged with and prosecuted for the predicate offense, and the jury specifically acquitted the defendant of that offense, a conviction for ethnic intimidation may not stand. Id. at 492-93.

of all of the underlying offenses for which he was charged.[11]  In so doing, we noted that, at the time of the defendant's offense, 18 Pa.C.S.A. § 6318(a) listed several underlying offenses, which, if "committed" by the defendant while he was unlawfully in contact with a minor, triggered higher grading than the statute's default grading.  We concluded, however, that the statute's default (lower) grading must apply in that case because the jury acquitted the defendant of all the underlying offenses for which he was charged, indicating that the jury "specifically determined" that the defendant did not "commit" the other offenses.  We opined that, were we to find otherwise, the sentencing court would be forced to guess which of the underlying offenses the defendant sought to commit when he contacted the minor, an absurd result.  (Richard) Reed, 9 A.3d at 1148.  As in Magliocco, we later emphasized that (Richard) Reed, is "distinguished by the plain text of [its] particular governing statute[], which controlled our disposition of [that] case[], but [is] not generally applicable to other offenses."  Miller, 35 A.3d at 1213.

Lastly, in Watson, as noted above, the defendant was convicted of voluntary manslaughter and possession of a concealed weapon despite raising a self-defense claim.  On appeal before our Court, the defendant challenged the sufficiency of the evidence to sustain her convictions, arguing that the Commonwealth failed to meet its burden of disproving her self-defense claim beyond a reasonable doubt and, thus, that the evidence was insufficient to establish the necessary criminal intent to sustain her convictions.  We agreed, concluding the Commonwealth had failed to disprove the self-defense claim, and, thus, essentially finding that the defendant killed her common law husband in self-defense.  Id. at 951.  Applying that crucial finding to the defendant's possession of a concealed weapon conviction, we concluded that "criminal intent cannot

---

[11] Pursuant to 18 Pa.C.S.A. § 6318(b), the offense of unlawful contact with a minor is to be graded the same as the most serious underlying offense for which the defendant attempted contact with a minor, or a first-degree misdemeanor, whichever is greater.

be inferred from the circumstances surrounding appellant's possession of the gun which killed her husband because appellant, having acted in self-defense, never used that gun to commit a crime." Id. at 953. Thus, Watson did not involve a jury acquittal, an inference from a jury acquittal, or an inconsistent verdict challenge. Rather, our holding with regard to the PIC conviction derived from *this Court's* determination that the defendant acted in self-defense by virtue of our conclusion that the Commonwealth failed to disprove the defendant's self-defense claim at trial.

Accordingly, in light of the above discussion, we reject any notion that Magliocco, (Richard) Reed, and Watson represent exceptions to the long-standing principles that juries may issue inconsistent verdicts and that reviewing courts may not draw factual inferences in relation to the evidence from a jury's decision to acquit a defendant of a certain offense.

We now return to our decision in Gonzalez. As noted above, the defendant in that case asserted that he shot and killed the victim in self-defense, and he was subsequently acquitted of murder and manslaughter, but convicted of PIC. Without reference to the case law, discussed above, permitting inconsistent verdicts and prohibiting courts from drawing inferences from a jury's acquittal on a particular offense, the Gonzalez Court nevertheless inferred from the defendant's acquittals a specific factual finding with regard to the evidence: that the jury believed the defendant's self-defense claim. On that basis, the Court reversed the defendant's PIC conviction, concluding the conviction was logically inconsistent with the defendant's acquittals. The Commonwealth presently argues that Gonzalez patently conflicts with our precedent in this area, and should be overruled.

We must be cautious in accepting the Commonwealth's invitation to overrule Gonzalez, however, as doing so would depart from the doctrine of *stare decisis*, which

"declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different." Estate of Fridenberg v. Commonwealth, 33 A.3d 581, 589 (Pa. 2011) (citation omitted). We are ever mindful of the important role *stare decisis* serves in "promot[ing] the evenhanded, predictable, and consistent development of legal principles, foster[ing] reliance on judicial decisions, and contribut[ing] to the actual and perceived integrity of the judicial process." Pennsylvania State Ass'n of Cnty. Comm'rs v. Commonwealth, 52 A.3d 1213, 1230 (Pa. 2012) (citation omitted). Yet, we note that "*stare decisis* is not a vehicle for perpetuating error, but rather a legal concept which responds to the demands of justice and, thus, permits the orderly growth process of the law to flourish." Buckwalter v. Borough of Phoenixville, 985 A.2d 728, 731 (Pa. 2009). We find such error to be manifest in Gonzalez.

First, as our discussion above demonstrates, Gonzalez departed from the long line of cases from both this Court and the United States Supreme Court which unequivocally permit inconsistent jury verdicts and prohibit drawing inferences from a jury's verdict of acquittal. In so doing, Gonzalez completely ignored Dunn, Carter, and their progeny, failing to address this precedent or to explain why the Court declined to adhere to it. Moreover, Gonzalez provided minimal analysis in support of this Court's rejection of the inconsistent verdicts in that case, relying principally upon our holding in Watson. However, the Gonzalez Court failed to appreciate the critical distinction that our holding in Watson arose out of a defendant's challenge to the sufficiency of the Commonwealth's evidence to disprove her self-defense claim, rather than from a claimed inconsistent jury verdict based upon an acquittal, and that we expressly concluded in Watson that the defendant acted in self-defense *based upon the evidence adduced at trial*, rather than by making an inference from a jury's acquittal. As

emphasized above, "[a]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence." Carter, 282 A.2d at 376 (internal quotation marks omitted). In reversing the defendant's PIC conviction therein, Gonzalez departed from that long-standing precept. Thus, given the lack of meaningful analysis in Gonzalez, that the Gonzalez Court misconstrued Watson, and, critically, that the decision was at odds with well established case law, we now come to the conclusion that it must be overruled.

Without resort to Gonzalez, the Superior Court's decision in the instant case cannot be supported, as none of the other cases upon which the court relies permit a reviewing court to reject a jury's inconsistent verdict. Accordingly, although Appellee's murder and attempted murder acquittals may be logically inconsistent with Appellee's PIC conviction, in light of our enduring acceptance of inconsistent verdicts in Pennsylvania, we conclude that the acquittals are not grounds for reversal of Appellee's PIC conviction, and, thus, we find the Superior Court erred in holding otherwise.

The order of the Superior Court is vacated. This case is remanded to the trial court for reinstatement of Appellee's judgment of sentence.

Former Justice McCaffery did not participate in the decision of this case.

Mr. Chief Justice Castille and Messrs. Justice Eakin and Stevens join the opinion.

Mr. Justice Saylor files a concurring opinion.

Mr. Justice Baer files a concurring opinion.