J-S70021-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: D.S., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: D.S., A MINOR | No. 3512 EDA 2015 |

Appeal from the Dispositional Order November 2, 2015
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s): CP-51-JV-0002195-2015
CP-51-JV-0002196-2015

BEFORE:  OLSON, J., OTT, J., and MUSMANNO, J.

MEMORANDUM BY OTT, J.:                    **FILED SEPTEMBER 27, 2016**

D.S., a minor,[1] appeals from the order entered November 2, 2015, in the Juvenile Division of the Philadelphia County Court of Common Pleas.  The juvenile court adjudicated D.S. delinquent on charges of possessing an instrument of crime ("PIC") and receiving stolen property ("RSP"),[2] and entered a dispositional order placing him on probation and directing that he remain in shelter care under the supervision of the Department of Human Services.  On appeal, D.S. challenges the sufficiency of the evidence supporting his adjudication of PIC.  For the reasons that follow, we affirm.

---

[1] D.S. was born in August of 1998.

[2] 18 Pa.C.S. §§ 907 and 3925(a), respectively.

The juvenile court summarized the facts recounted during the adjudication hearing as follows:

> On October 20, 2015, Officer Daniel Levitt, Badge # 5482, was assigned to the Northwest Task Force in the vicinity of the 2800 block of North 20th Street at 10:29PM. PO Levitt was operating a police vehicle and pulled up to D.S. PO Levitt approached D.S. to stop him for a curfew violation, because D.S. appeared very young. D.S. stopped when requested. PO Levitt asked D.S. for his age and D.S. informed PO Levitt that he was seventeen years old. As a result of the curfew violation, PO Levitt requested identification. D.S. reached into his bag and swung his body around. The bag was a normal camping/book bag, with a strap. [D.S.] repeatedly spun around, as PO Levitt attempted to shine his flashlight into the bag, and [D.S.] kept reaching in his bag. PO Levitt's partner instructed D.S. to stop spinning around. PO Levitt observed that D.S. was attempting to shove a gun in the bag. D.S. readily stated that it was a "BB gun."
>
> From the moment that the officers commenced the investigation, D.S. appeared nervous, and was looking all around. D.S.'s hands were shaking. D.S.'s heart was thumping really heavily. The described interaction took place near a street light.
>
> PO Levitt recovered the firearm and placed it on a property receipt. Said firearm was an extremely realistic looking pellet gun. The firearm had a slide that racked, just like a real gun. The CO2 cartridge part looked very real. The firearm had a magazine that slid over like a real gun.
>
> After recovering said firearm, PO Levitt searched the bag and recovered two GPS systems, a knit hat and a knit mask, and a pair of female Fuji sun glasses.
>
> The GPS devices were placed on Property Receipt # 3224516. Lorraine Townsend was the lawful owner of one of the GPS devices, valued at $140.00, that had been placed in her 2004 Jeep Liberty parked at 2144 Stenton Avenue at 9 pm that night. Ms. Townsend did not know D.S., nor did she give him permission to enter her vehicle or take the GPS device. Ms. Townsend's vehicle had not been damaged.

Albert Foyer was the lawful owner of the second GPS device, a Garm[i]n GPS valued at $300.00, that had been placed in his 2005 gold Honda Pilot parked at 7900 Cedarbrook Avenue at 5 pm that night. Mr. Foyer's vehicle had not been damaged.

D.S. testified that he was on his way home from a friend's house, when he was stopped by the two police officers. D.S. claims that the officers asked him for identification, and that D.S. openly revealed that he had a BB gun. D.S. claims that he was not nervous. D.S. claims that he was aware that the BB gun was in the bag, but he did not know that anything else was in the bag. D.S. admits that the book bag belonged to him, but claimed that the book bag was in the possession of his "play cousin," Khalil Palmer. D.S. testified that Mr. Palmer had the book bag at 8 or 9 o'clock that day, and that D.S. received the book bag at 9:30 or 10 o'clock. D.S. claims that he did not look inside of the book bag upon its return. Despite claiming not to know what was in the bag on direct examination, D.S. admitted knowledge of the "wave cap" which had been described by the officer to be a knit hat and knit mask.

Juvenile Court Opinion, 3/21/2016, at 1-3.

On October 21, 2015, two juvenile petitions were filed against D.S., each charging him with one count of theft from a motor vehicle, receiving stolen property, and possessing an instrument of crime.[3] An adjudication hearing was held on November 2, 2015. At the conclusion of the hearing, the juvenile court found D.S. committed the offenses of RSP and PIC at Docket No. 2195-2015, and RSP at Docket No. 2196-2015, and adjudicated him delinquent on those charges. The court found acquitted him of both

---

[3] *See* 18 Pa.C.S. §§ 3934(a), 3925(a), and 907.

counts of theft from a motor vehicle.[4]  The same day, the juvenile court directed D.S. remain in shelter care at CBS-Vision Quest, and placed him on probation.  This timely appeal followed.[5]

D.S.'s sole claim on appeal challenges the sufficiency of the evidence supporting his delinquency adjudication on the charge of PIC.[6]  He argues, first, the Commonwealth failed to prove the BB gun was a weapon or an instrument of crime, as those terms are defined in the Pennsylvania Crimes Code.  D.S.'s Brief at 9.  Next, he contends that, even if the BB gun recovered from his book bag is considered an instrument of crime, the Commonwealth failed to prove the requisite intent element of the crime, namely, that he possessed the BB gun with the intent to employ it criminally.  *Id.* at 14.

Our review of a challenge to to the sufficiency of the evidence supporting a delinquency adjudication is well settled:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must

---

[4] The court also dismissed the charge of PIC at Docket No. 2196-2015 because both PIC charges were based on D.S.'s possession of the BB gun. *See* N.T., 11/2/2015, at 17.

[5] On February 5, 2016, the juvenile court ordered D.S. to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). D.S. complied with the court's directive and filed a concise statement on February 25, 2016.

[6] D.S. does not challenge his adjudication on two counts of RSP.

establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth.

In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth, and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In re A.V.*, 48 A.3d 1251, 1252–1253 (Pa. Super. 2012) (quotation omitted).

Here, D.S. challenges his adjudication on the charge of PIC. Section 907 of the Crimes Code provides, in relevant part:

**(a) Criminal instruments generally.--**A person commits a misdemeanor of the first degree if he possesses any instrument of crime with intent to employ it criminally.

**(b) Possession of weapon.--**A person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally.

* * * *

**(d) Definitions.--**As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

* * * *

- 5 -

**"Instrument of crime."** Any of the following:

(1) Anything specially made or specially adapted for criminal use.

(2) Anything used for criminal purposes and possessed by the actor under circumstances not manifestly appropriate for lawful uses it may have.

**"Weapon."** Anything readily capable of lethal use and possessed under circumstances not manifestly appropriate for lawful uses which it may have. The term includes a firearm which is not loaded or lacks a clip or other component to render it immediately operable, and components which can readily be assembled into a weapon.

18 Pa.C.S. § 907.

D.S. first contends the evidence was insufficient to establish the BB gun recovered from his book bag was either a weapon or an instrument of crime as defined by the statute. He argues a BB gun does not meet the definition of a weapon because it is not "readily capable of lethal use." D.S.'s Brief at 11, *citing* 18 Pa.C.S. § 907(d). Moreover, he emphasizes the Commonwealth failed to introduce any photographs of the gun, or ballistics reports, and, without this additional evidence, a "functioning BB gun does not automatically qualify as a weapon pursuant to Section 907[.]" *Id.* at 12. Further, D.S. asserts the Commonwealth also provided "no evidence that [the BB gun] was specifically made or adapted for criminal use," and therefore, it could not be considered an "instrument of crime." *Id.* at 13.

The trial court, however, determined the recovered BB gun constituted an "instrument of crime" under Section 907(d). Specifically, the court found the gun was "used for criminal purposes and possessed by the actor under

circumstances not manifestly appropriate for lawful uses it may have." Juvenile Court Opinion, 3/21/2016, at 3, *quoting* 18 Pa.C.S. § 907(d). The juvenile court stated it was "well aware that BB guns can be used to commit gun-point robberies, as well as for the thief's self-protection during the commission of thefts." *Id.* at 4.

Our review of the record reveals the following. Officer Levitt testified he stopped D.S. for a curfew violation at 10:30 p.m. N.T., 11/2/2015, at 2-3. When the officer asked D.S. for identification, D.S. acted "very nervous" and kept "spinning around" as he reached into his book bag. *Id.* at 4. The officer then shined his flashlight in the bag, and observed D.S. "shoving a gun into the book bag." *Id.* Officer Levitt described the BB gun as "very, very realistic looking." *Id.* at 5. He explained:

> [I]t looked like a real gun, your Honor. In fact, it even had a slide on there that racks, just like a real gun would. There was no – fake guns are supposed to have the plastic inserts on there, different colors and it had none of that. It was so realistic where the $CO_2$ cartridge part where you go to fire pellets with a pellet gun. Actually had a magazine that slid over also like a real gun.

*Id.* Moreover, Officer Levitt also recovered from the book bag two recently stolen GPS systems, a pair of female sunglasses, and a knit hat and mask. *Id.* at 5-6.

Under these facts, we find no reason to disagree with the determination of the juvenile court that the BB gun constituted an "instrument of crime" as defined in the statute. As the juvenile court explained in its opinion: "The totality of the circumstances leads this court

to infer that D.S. possessed the BB gun, an instrument which this court knows to be commonly used for criminal purposes, under circumstances not manifestly appropriate for the lawful uses it may have." Juvenile Court Opinion, 3/21/2016, at 4-5. The Commonwealth was not required to also prove the BB gun was "specially made or specially adapted for criminal use" or that it met the definition of a "weapon." 18 Pa.C.S. § 907. The statute is disjunctive; proof that the BB gun was something "used for criminal purposes and possessed [] under circumstances not manifestly appropriate for lawful uses it may have" was sufficient to establish the gun was an "instrument of crime." 18 Pa.C.S. § 907(d). Accordingly, D.S.'s first argument fails.[7]

Next, D.S. contends that, even if we conclude the BB gun constituted an "instrument of crime," the evidence was insufficient to demonstrate he had the requisite "intent to employ it criminally." D.S.'s Brief at 14. D.S. asserts mere possession of an instrument of crime does not prove intent, and the other items recovered from the book bag do not support an inference that he used or intended to use the BB gun in the perpetration of a crime, particularly when, as here, he was found **not guilty** of theft from a motor vehicle. *Id.* at 14, 16. Rather, D.S. argues the juvenile court made

_____

[7] The fact that the Commonwealth did not introduce into evidence any photos or ballistics reports regarding the BB gun is of no moment. Police Officer Levitt described the gun in detail in his testimony.

"improper inferences based on the other items found in [his] book bag" and engaged in "rampant speculation and conjecture." *Id.* at 18, 19. He contends the facts of his case are similar to those presented in *In Re A.C.*, 763 A.2d 889 (Pa. Super. 2000), and *A.V.*, *supra*.

In *A.C.*, the defendant cut the complainant's ear with a knife during an altercation. *A.C.*, *supra*, 763 A.2d at 890. The court acquitted the defendant on assault charges based upon its finding she used the knife in self-defense. However, the juvenile court adjudicated her delinquent on the charge of PIC. *Id.* On appeal, a panel of this Court reversed, concluding the defendant's acquittal of the assault charges on the basis of self-defense, "precluded the trial court from finding that [she] possessed the requisite intent to employ the knife criminally." *Id.* at 891. Relying on the Pennsylvania Supreme Court decision, *Commonwealth v. Gonzalez*, 527 A.2d 106 (Pa. 1987),[8] the panel observed: "[A] conviction for PIC cannot stand if the appellant is acquitted on the underlying charge on the basis of self defense, because the factfinder cannot reasonably infer that the defendant intended to make criminal use of a weapon that she employed

_____

[8] In *Gonzalez*, the Supreme Court reversed the defendant's jury conviction of PIC, finding the evidence was insufficient to prove he possessed a shotgun with the intent to employ it criminally when the jury acquitted him of murder and voluntary manslaughter. *Gonzalez*, *supra*, 527 A.2d at 107. The Court held "since [the defendant] did not commit a crime with the shotgun, and no other evidence sufficient to support a finding of criminal intent was presented at trial, [his] conviction or possessing an instrument of crime must be reversed." *Id.* at 108.

solely in her defense." **Id.** Moreover, the panel also rejected the trial court's inference that, because the defendant "experienced significant discomfort from concealing and carrying the unsheathed six-inch knife[,]" she must have intended to "employ the weapon criminally." **Id.** at 891-892.

Likewise, in **A.V.**, a panel rejected the trial court's finding that the defendant's mere possession of counterfeit money, while outside his home in violation of the terms of his probation, was sufficient to support a conviction of PIC. In that case, the defendant was confined to house arrest during non-school hours, as part of a probationary sentence. **A.V.**, **supra**, 48 A.3d at 1252. A police officer stopped the defendant when the officer observed him running down the street at 7:00 p.m. **Id.** A subsequent pat-down search revealed four counterfeit $20 bills in the defendant's pocket.

The panel declined to disturb the trial court's first determination that the bills met the definition of an "instrument of crime." The panel reasoned: "[T]he counterfeit bills were made for criminal use as [they] resembled legitimate U.S. currency and could be illegally exchanged in a transaction, which would constitute forgery and theft by deception." **Id.** at 1253.

Nevertheless, the panel rejected the court's subsequent determination "that A.V.'s mere possession of counterfeit money showed his intent to use the bills for a criminal purpose simply because there is 'no lawful use' for counterfeit bills." **Id.** at 1254. Rather, the panel explained the court's finding that the bills had no lawful purpose, "does not relieve the Commonwealth of its burden to prove an actor's intent to use the counterfeit

- 10 -

money for a criminal purpose beyond a reasonable doubt." *Id.* In that case, the panel found there was no evidence demonstrating the defendant intended to use the counterfeit bills for a criminal purpose. *Id.*

Conversely, in the present case, the juvenile court's finding that D.S. possessed the BB gun with the intent to employ it criminally was based on more than D.S.'s mere possession of the gun. The court opined:

> D.S. completely ignores the fact that the BB gun, was an extremely realistic looking pellet gun, which was found alongside a knit mask, a knit hat, a pair of female sun glasses, and two stolen GPS devices, which appear to have been taken within a few hours. D.S. is not a female. D.S. did not claim lawful possession of any of the items mentioned. D.S. possessed all of these items in the same bookbag, which he carried while violating curfew. D.S. appeared to be hiding the contents of the bookbag from the police officers, upon approach. D.S.'s evasive behavior indicates consciousness of guilt, with regard to both the possession of the instrument of crime, as well as the possession of the stolen goods. When he testified, D.S. claimed that he knew that the BB gun was in the bookbag, but he did not know the stolen goods were in the same bag. D.S. did not provide any explanation for why he had the BB gun. This court does not believe that D.S. would know that the BB gun was in the bag, while being unaware that the recently stolen items were also in the bag.

Juvenile Court Opinion, 3/21/2016, at 3-4.

The juvenile court found the fact that D.S. had "all the tools of a robber"[9] in his book bag at the time of his arrest, which was within 90 minutes of when at least one of the GPS devices had been stolen, supported

_____

[9] Juvenile Court Opinion, 3/21/2016, at 4.

- 11 -

an inference that D.S. had stolen the devices himself. We agree this inference is supported by the record.

Moreover, while we acknowledge the juvenile court acquitted D.S. on the charges of theft from a motor vehicle, we do not find the decision in **A.C.** controlling. First, the holding in **A.C.** is undermined by the Pennsylvania Supreme Court's recent decision in **Commonwealth v. Moore**, 103 A.3d 1240 (Pa. 2014).

In **Moore**, a jury acquitted the defendant of murder and assault charges, presumably based on his claim of self-defense. However, the same jury found him guilty of PIC. **Id.** at 1242. On appeal, a panel of this Court reversed the PIC conviction, finding that the jury's acceptance of the defendant's self-defense claim precluded a finding that the defendant possessed the weapon with the intent to employ it criminally. **Moore**, **supra**, 103 A.3d at 1243. In doing so, the panel specifically relied upon the decision in **Gonzalez**, **supra**. On appeal, however, the Supreme Court vacated the order of this Court, and remanded the case to the trial court for reinstatement of the verdict. **Id.** at 1250. Specifically, the Supreme Court held:

> **Gonzalez** departed from the long line of cases from both this Court and the United States Supreme Court which unequivocally permit inconsistent jury verdicts and prohibit drawing inferences from a jury's verdict of acquittal. … As emphasized above, "[a]n acquittal cannot be interpreted as a specific finding in relation to some of the evidence." In reversing the defendant's PIC conviction therein, **Gonzalez** departed from that longstanding precept. Thus, given the lack of meaningful analysis in **Gonzalez**, that the **Gonzalez** Court misconstrued

- 12 -

> [**Commonwealth v. **]**Watson**, [431 A.2d 949 (1981),] and, critically, that the decision was at odds with well established case law, we now come to the conclusion that it must be overruled.
>
> Without resort to **Gonzalez**, the Superior Court's decision in the instant case cannot be supported, as none of the other cases upon which the court relies permit a reviewing court to reject a jury's inconsistent verdict. Accordingly, although [the defendant's] murder and attempted murder acquittals may be logically inconsistent with [his] PIC conviction, in light of our enduring acceptance of inconsistent verdicts in Pennsylvania, we conclude that the acquittals are not grounds for reversal of [the defendant's] PIC conviction, and, thus, we find the Superior Court erred in holding otherwise.

**Id.** (internal citation omitted). Because the panel in **A.C.** also relied upon the holding in **Gonzalez**, we find the decision in **A.C.** is no longer good law on this point based upon the Supreme Court's ruling in **Moore**.

Accordingly, turning to the present matter, the fact the juvenile court entered inconsistent adjudications is not, itself, grounds for reversal of D.S.'s PIC adjudication. Indeed, the fact D.S. was carrying a realistic looking BB gun, at night, while also in the possession of stolen GPS systems, supports the reasonable inference that he intended to "employ [the BB gun] criminally."[10]  18 Pa.C.S. § 907(a).

---

[10] We note the Commonwealth's claim that D.S. "held the BB gun in his hand when the officers approached" is not supported by the record. Commonwealth's Brief at 10. First, Officer Levitt never testified D.S. was **holding** a BB gun in his hand. **See** N.T., 11/2/2015, at 2-8. Rather, the officer stated that when he shined his flashlight in D.S.'s bag, D.S. was "shoving a gun into the book bag." **Id.** at 4. The more logical inference from this testimony is that D.S. was attempting to further secrete the BB gun in his book bag in the hopes that the officer would not see it while he retrieved his identification.

Therefore, because we conclude the evidence was sufficient to support D.S.'s adjudication on the charge of PIC, we affirm the dispositional order on appeal.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2016