J-S41003-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DANNY RIVERA | : | |
| | : | |
| Appellant | : | No. 237 MDA 2020 |

Appeal from the Judgment of Sentence Entered October 16, 2019,
in the Court of Common Pleas of Dauphin County,
Criminal Division at No(s): CP-22-CR-0003257-2018

BEFORE:   KUNSELMAN, J., McLAUGHLIN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY KUNSELMAN, J.:                **FILED NOVEMBER 24, 2020**

Danny Rivera appeals from the judgment of sentence imposed following

his conviction of aggravated assault—bodily injury with a deadly weapon.[1]  We

affirm.

The trial court summarized the relevant factual history as follows:

> Late on the night of June 2, 2018, Elizabeth Hall arrived
> home from her job at the Family Dollar Store at about 11:50 p.m.
> She had difficulty finding a parking place near her house because
> of the presence of police vehicles.  Ms. Hall lived at 73 North 18th
> Street in Harrisburg.  Two other people, Elizabeth Henderson and
> Omar Alvarado lived there with her.  Another person, Candi Potts
> was staying at the house.
>
> Elizabeth Henderson, Omar Alvarado, Candi Potts, her friend
> Daisha, and several children were on Ms. Hall's porch.  Ms. Hall
> learned that the police were responding to a call regarding

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 2702(a)(4).

[Rivera], although [Rivera] was not there at the time. Ms. Hall knew [Rivera] as a customer who frequented the Family Dollar Store where she worked.

Approximately fifteen minutes after police left, as the group sat on the porch, Ms. Hall noticed a person she recognized as . . . Rivera run up an alley toward the house. Ms. Hall heard him say "I want you, you f------ b-----. I am going to get you, you f------ b-----." Ms. Hall understood the comment to be directed to Candi Potts. Potts began staying with Ms. Hall after she separated from [Rivera]. Ms. Hall called 911 and reported that [Rivera] had returned. [Rivera] banged on the door. Ms. Hall yelled through the door that she had called the police. Police responded quickly but did not find [Rivera]. After the police left, Ms. Hall saw [Rivera] run toward the porch. Police again responded to her call, but did not find [Rivera].

[Rivera] returned, this time in his truck. Ms. Hall saw him get out of his truck, leave the door open, and point a gun at the people on the porch. Everyone attempted to rush into the house. Ms. Hall grabbed the children and pushed them indoors. [Rivera] raised the pointed gun toward the second or third floor of the house and fired a shot. Omar Alvarado and Candi Potts did not make it into the house. [Rivera] yelled to Candi Potts, "I am going to kill you, you f------ b---- ." Omar Alvarado grabbed [Rivera]. A scuffle ensued. [Rivera] put the gun to Alvarado's head. Ms. Hall could hear them arguing in Spanish. Alvarado yelled for her to open the door. Ms. Hall called the police. Ms. Hall saw a crescent shaped cut on Omar Alvarado's face which was bleeding and swollen.

Harrisburg Police Officer Martise Scott was working the night shift and responded to multiple calls that [Rivera] was harassing his ex and residents of the house. As Officer Scott left the property following one of the responses, he saw the vehicle described as [Rivera's]. As Officer Scott radioed to another officer that he would return to the address, he received a dispatch which indicated that a gun was involved. Officer Scott turned the lights on his police vehicle off and approached [Rivera's] vehicle. Officer Scott saw [Rivera] on the porch striking Omar Alvarado multiple times with a black object in his hand. Officer Scott yelled for [Rivera] to stop what he was doing. [Rivera] threw the black object off the porch and resumed striking Alvarado. Another Officer, Tyler Auerbeck, arrived to assist. Officer Scott told

Auerbeck that [Rivera] had thrown an object off the porch to the neighboring property. [Rivera] followed the officers' commands to stop and came off the porch, where they placed him in a prone position and searched him for firearms.

Omar Alvarado told Officer Auerbeck that [Rivera] pistol whipped him. Officer Auerbeck observed an injury on Omar Alvarado's face. Officer Auerbeck searched the porch of the property next door and found a loaded and operational black 40 caliber pistol. He cleared the firearm and secured it in his vehicle to be sent to the Pennsylvania State Police ballistics lab.

Officer Nathaniel Pucciarello also responded to the numerous calls to 73 North 18th Street that evening of an ongoing domestic incident involving [Rivera]. During those visits, Officer Pucciarello counseled Ms. Potts as to protection from abuse and victim/witness resources. In his last response, he arrived as Officers Scott and Auerbeck were taking [Rivera] into custody. Officer Pucciarello located an unfired 40 caliber handgun round. Officers swept the area for the casing of a fired bullet but were unable to find one.

Officer Gregory Hill also responded that evening to the various calls. Following his response to an unrelated incident, Officer Hill arrived at the scene to take custody of evidence and assist with interviews. Ms. Potts refused to speak with Officer Hill. Ms. Hall and others provided statements. Officer Hill placed [Rivera] in his vehicle and read him his *Miranda* rights. [Rivera] denied what the witnesses reported or that he had gun or pistol whipped anyone.

Pennsylvania State Police firearm and tool mark examiner Todd Neumyer examined the firearm and found that the magazine cartridge, which could hold up to ten cartridges, contained eight undischarged cartridges. The firearm had visible powder residue in the barrel. The serial number of the firearm was obliterated but retrieved by Mr. Neumyer.

Candi Potts testified that she and [Rivera] had broken up on the day of the incident because she learned that [Rivera] had been cheating on her. Ms. Potts acknowledged that she refused to talk to police that night. She denied that [Rivera] was yelling when he arrived that night, that she heard gunshots, or saw [Rivera] with a gun. Ms. Potts claimed that another person, a Michael Bell, with

whom she had a previous relationship, put the gun on the property next door.

Trial Court Opinion, 3/26/20, at 1-4 (footnote and citations to the record omitted).

Following this incident, police formally arrested Rivera and charged him with multiple counts of aggravated assault, firearm offenses, and recklessly endangering another person, as well as other related offenses. The matter proceeded to trial, at the conclusion of which a jury found Rivera guilty of aggravated assault—bodily injury with a deadly weapon, and not guilty of the remaining charges. On October 16, 2019, the trial court sentenced Rivera to serve thirty-three to eighty-four months in prison. Rivera filed a timely post-sentence motion which the trial court denied. Rivera filed a timely notice of appeal.[2] Both Rivera and the trial court complied with Pa.R.A.P. 1925.

Rivera raises the following issue for our review:

Whether the trial court abused its discretion in denying [Rivera's] post-sentence motion because the jury verdict was so contrary to the weight of the evidence as to shock one's sense of justice where [Rivera] was charged with an element of aggravated assault, bodily  injury with a deadly weapon and was acquitted of that element/crime?

_____

[2] The notice of appeal incorrectly states that the appeal is taken from "the judgment of sentence entered in this matter on the 17th day of September 2019 and the denial of Post-Sentence Motions on the 29th day of January 2020." While the notice indicates an incorrect date for the judgment of sentence, and purports to appeal from the January 29, 2020 order denying the post-sentence motions, the appeal properly lies from the judgment of sentence imposed on October 16, 2019. *See Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (correcting the caption when appellant misstates where the appeal lies).

Rivera's Brief at 5 (excessive capitalization omitted).

Rivera challenges the weight of the evidence supporting his conviction. The following legal principles apply when a challenge to the weight of the evidence supporting a conviction is presented to the trial court:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000) (citations, footnotes and quotation marks omitted). Thus, to allow an appellant "to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the [trial] court." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2016) (internal citation omitted).

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim *is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence*. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

**Commonwealth v. Clay**, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis in original, internal citations omitted).

The Crimes Code defines aggravated assault—bodily injury with a deadly weapon as follows: "[a] person is guilty of aggravated assault if he . . . attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon." 18 Pa.C.S.A. § 2702(a)(4).

Rivera claims that the trial court abused its discretion in denying his post-sentence motion challenging the verdict based on the weight of the evidence. He argues that the plain language of the aggravated assault statute includes the use of a deadly weapon as a specific statutory element. Rivera maintains that the only potentially applicable deadly weapon in this case was a firearm.

Rivera points out that the Commonwealth charged him with the separate crime of persons not to possess a firearm pursuant to 18 Pa.C.S.A. § 6105.[3] He stipulated at trial that he was ineligible to possess a firearm. Thus, Rivera asserts, the only issue for the jury to decide on that particular count was whether he possessed, used, or controlled a firearm on the night in question. Rivera contends that the Commonwealth failed to prove that element beyond a reasonable doubt because the jury acquitted Rivera of persons not to possess a firearm.

Rivera does not claim this is a case of inconsistent jury verdicts. Instead, he claims that "this is a case of the Commonwealth choosing to charge an element of one crime as a separate crime and what must happen when the factfinder acquits on that underlying element/crime." Rivera's Brief at 14. According to Rivera, his conviction cannot stand because the jury specifically found that he did not commit the offense of person not to possess a firearm.

The trial court considered Rivera's weight challenge and determined that the verdict did not shock one's conscience. It reasoned:

> The evidence demonstrated that [Rivera] fired shots toward the porch and that when Omar Alvarado attempted to intervene,

---

[3] Section 6105 provides, in relevant part, as follows: "[a] person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth." 18 Pa.C.S.A. § 6105(a).

[Rivera] hit Alvarado in the face with a black object, causing injury. [Rivera] then threw the black object onto a neighboring property. Police found a black handgun with two bullets missing from the cartridge. Forensic examination revealed that the gun ha[d] been discharged. With that evidence, the jury could easily conclude that [Rivera] struck and injured Alvarado with the handgun he discarded.

The verdict is consistent with the weight of evidence despite the jury's acquittal of [Rivera] on the weapons charges. In **Commonwealth v. Moore**, [103 A.3d 1240, 1249 (Pa. 2014)], the Pennsylvania Supreme Court upheld the defendant's conviction for possession of an instrument of crime where the defendant was acquitted of related offenses involving use of that instrument of a crime, such as a firearm. The Supreme Court reiterated the "longstanding principles that juries may issue inconsistent verdicts and that reviewing courts may not draw factual inferences in relation to the evidence from a jury's decision to acquit defendant of a certain offense." [**Id**.] The Supreme Court reminded that, although verdicts may be logically inconsistent, inconsistent acquittals are not grounds for reversal of a conviction. [**Id**. at 1250].

Trial Court Opinion, 3/26/20, at 6-7.

As discussed above, we give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is not against the weight of the evidence. In this matter, we discern no abuse of discretion by the trial court in arriving at its determination that the verdict of guilt did not shock the conscious despite the fact that the jury acquitted Rivera of persons not to possess a firearm. Pennsylvania courts have long recognized that jury acquittals may not be interpreted as specific factual findings with regard to the evidence, as an acquittal does not definitively establish that the jury was not convinced of a defendant's guilt. **Moore**, 103 A.3d at 1246. Rather, it has been the

understanding of the courts of this Commonwealth that an acquittal may merely show lenity on the jury's behalf, or that "the verdict may have been the result of compromise, or of a mistake on the part of the jury." *Id*. Accordingly, Rivera's weight challenge merits no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/24/2020