J-A30002-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| RYAN THOMAS REESE | : | |
| | : | |
| Appellant | : | No. 280 WDA 2017 |

Appeal from the Judgment of Sentence Entered January 25, 2017
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0001118-2015

BEFORE:  BOWES, J., STABILE, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                                    **FILED MAY 23, 2018**

Ryan Thomas Reese appeals from the judgment of sentence of nine to twenty-four months incarceration imposed following his conviction for corruption of minors, graded as a felony of the third degree.  We affirm.

On October 3, 2013, S.L., then a fifteen-year-old girl, was in her apartment along with her eighteen-year-old boyfriend Brandon White, and one other individual.  The apartment contained marijuana, drug paraphernalia, and a gun.  Connellsville Police Department officers arrived and entered, eventually arresting White.  Appellant, who was one of the police officers, informed S.L. that she would be charged through juvenile court for her possession of drug  paraphernalia.

Shortly after that incident, Appellant, then thirty-five years old, spoke to S.L. on the phone and invited her to the Connellsville Police gym.  S.L.

went, believing that the two would discuss the cases against her and White.[1] Instead, Appellant engaged in casual conversation and showed her a weight vest, which she tried on. S.L. stated that the vest was too heavy, and Appellant slid his hand down her shirt and touched her nipple while helping to remove the vest. S.L. assumed that the contact was accidental and thought nothing further of it at the time.

In early November, Appellant appeared at S.L.'s apartment and told her that White had to turn himself in on the charges from October 3. Appellant indicated that S.L. might be able to help by becoming a confidential informant ("CI"). Appellant turned sixteen years old shortly thereafter, and received a Connellsville Police Department shirt from Appellant as a gift, which he left on her porch.

In December, S.L. met Appellant in a parking lot. S.L. thought the two would discuss the case against her and White. She entered his personal vehicle and, after a short drive, Appellant parked and shut off the vehicle. He asked her if she would like to have sex. S.L. said no. Appellant responded by kissing her and putting his hands down her pants. Appellant pulled his hand out, and asked S.L. to perform oral sex on him. She agreed, thinking that "if I do this my charges will be gone, [White]'s charges will be

_____

[1] S.L. could not remember if her boyfriend called Appellant, or if Appellant called S.L.'s boyfriend. All parties had provided their personal information to the officers at the crime scene.

gone and everything will just disappear." N.T. Trial, 11/7-9/16, at 42. After Appellant ejaculated inside her mouth, she walked home.

Approximately one month later, White was released from jail. Appellant thereafter enlisted S.L. to act as a CI for three drug buys, which he indicated would result in all charges being dropped. She performed two buys. On the way back from the second, Appellant told her there were other ways to work off the charges and asked her to perform oral sex, which she did.

The authorities learned of these events in February of 2014, when S.L. and several others went to a Pennsylvania State Police barracks in connection with an investigation into S.L.'s mother, who was suspected of stealing jewelry. S.L.'s mother had previously spoken to the investigating troopers, and had shared her knowledge about S.L.'s contact with Appellant. As a result, a trooper asked S.L. about the allegations. S.L. told him what had happened. The matter was then referred to Trooper James Aughinbaugh for investigation.

Trooper Aughinbaugh interviewed S.L., who supplied details of the sexual favors and undercover buys. He reviewed criminal dockets and determined that her details were corroborated by criminal cases filed by Appellant. He then arranged for S.L. to call Appellant in his presence. She made approximately a dozen calls, but the conversations did not produce

incriminating statements. In April, S.L. informed Trooper Aughinbaugh that she no longer wished to cooperate and ceased contact.

On May 16, 2014, S.L.'s mother contacted Trooper Aughinbaugh and related that she had overheard S.L. speaking to Appellant on the phone and S.L. intended to meet him later that evening. Trooper Aughinbaugh and several other troopers used multiple vehicles to surveil the Connellsville Police Department's building. They saw S.L. arrive and stand next to Appellant's personal vehicle. Shortly thereafter, Appellant exited the building in street clothes and entered his vehicle. S.L. joined him, and the two drove around for approximately twenty minutes. Appellant then pulled into a gravel lot and parked his vehicle in a spot concealed from view. The vehicle remained parked for twenty-one minutes. S.L. testified to this meeting at trial, and said that she had sex with Appellant in the backseat of the car.

The officers continued to observe the vehicle after it exited the lot, but at some point the investigators suspected their cover had been blown based on Appellant's behavior. An officer consulted the Clean Network system, which the police use to research registration information on vehicles. These requests are logged. His investigation revealed that Appellant requested information on a license plate that matched one of the vehicles used to tail Appellant on May 16.

At trial on these charges, Appellant testified and agreed that he used S.L. as a CI. Additionally, he confirmed that he left her a birthday gift, and agreed that he had consensual sex with S.L. in his vehicle. However, he denied any other sexual encounters between the two, including the allegations of oral sex.

The jury found Appellant guilty of corruption of minors, and not guilty of involuntary deviate sexual intercourse ("IDSI"). The trial court imposed the aforementioned sentence and Appellant filed a timely notice of appeal. Appellant complied with the order to file a Pa.R.A.P. 1925(b) statement and the trial court authored its opinion in response. The matter is ready for our review of Appellant's claims:

I.   Whether the evidence was insufficient to sustain a guilty verdict for corruption of minors when the Commonwealth failed to prove beyond a reasonable doubt that Defendant, by any course of conduct in violation of chapter 31 (of title 18) (relating to sexual offenses), corrupted or tended to corrupt the morals of any minor?'

II.  Whether the lower court erred in its denial of the motion for recusal?

III. Whether the lower court erred in its denial of the motion for change of venue/venire?

Appellant's brief at 6.

Appellant's first argument challenges the sufficiency of the evidence. Our standard of review is well settled.

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there

- 5 -

is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fitzpatrick*, 159 A.3d 562, 567 (Pa.Super. 2017)

(citation omitted).

Appellant was charged under the following subsection of the corruption

of minors statute:

Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S. § 6301(a)(1)(ii).

As we explained in *Commonwealth v. Kelly*, 102 A.3d 1025

(Pa.Super. 2014) (*en banc*):

Subsection (a)(1)(ii) identifies two distinct offenses. The part at issue addresses the application of the corruption of minors statute to sexual offenses committed by the adult defendant. The second part of subsection (a)(1)(ii) addresses the application of the corruption of minors statute where the

defendant "aids, abets, entices or encourages" a minor to commit a sexual offense. 18 Pa.C.S. § 6301(a)(1)(ii). Considered together, these provisions evidence a clear intent to provide additional penalties when the act or acts that corrupt the morals of a minor are sexual offenses, irrespective of whether the sexual offense was committed by an adult defendant or a minor victim.

*Id*. at 1030.

Presently, we are dealing with the former crime, pertaining to sexual offenses committed by the defendant. As indicated by the statutory text, the Commonwealth was required to establish that the Appellant committed a course of conduct in violation of Chapter 31 (relating to sexual offenses), which corrupted or tended to corrupt the morals of S.L. The Commonwealth submits that Appellant committed multiple violations of indecent assault.

**(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

. . . .

(2) the person does so by forcible compulsion; [or]

(3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution[.]

. . . .

18 Pa.C.S. § 3126. Furthermore, the definitions section defines the pertinent terms as follows:

**"Forcible compulsion."** Compulsion by use of physical, intellectual, moral, emotional or psychological force, either express or implied. The term includes, but is not limited to,

> compulsion resulting in another person's death, whether the death occurred before, during or after sexual intercourse.
>
> . . . .
>
> **"Indecent contact."** Any touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person.

18 Pa.C.S. § 3101.

Appellant's argument that the evidence was insufficient attaches great significance to the fact that the jury acquitted him of IDSI.

> A careful review of the facts as fully set forth by the appellant clearly indicate insufficiency as a matter of law. **First, we can all agree that the acquittal on the IDSI charge removes that offense from consideration as part of "any course of conduct."** Once that is removed from the equation, what can we find in the record that establishes a sexual offense? All that remains is the consensual sexual intercourse between Mr. Reese and [S.L.]. Said consensual intercourse cannot be considered as a "sexual offense" under Chapter 31 so as to be an act that would fall into a "course of conduct."
>
> The "accidental touching" at the gym is not a sexual offense. Assuming *arguendo* that we would view it as a sexual offense it is one act: a single episode that does not constitute a "course of conduct." Additionally, it is impossible for any argument to prevail which posits that the oral sex as testified to by the alleged victim can serve as a sexual offense since Officer Reese was acquitted of the IDSI charge.

Appellant's brief at 16-17 (emphasis added).

Next, Appellant cites **Kelly**, in which we held that the "course of conduct" element of (a)(1)(ii) cannot be met by a single act.

> Given the well-established meaning of the phrase, "course of conduct," we ascertain no ambiguity in its use in subsection (a)(1)(ii) of the corruption of minors statute. Consequently, we hold that the use of the phrase "course of conduct" in the first

provision of subsection (a)(1)(ii) imposes a requirement of multiple acts over time[.]

***Kelly***, ***supra*** at 1031.

Taken together, Appellant maintains that both oral sex incidents must be removed from consideration, since the jury acquitted him of the facts supporting the IDSI crime.[2] Then, examining the remaining evidence, he submits that the Commonwealth cannot meet its burden of proving a course of conduct since all that remained was one act of consensual sexual intercourse.

We begin with Appellant's assertion that "acquittal on the IDSI charge removes that offense from consideration[.]" Appellant's brief at 16. Appellant does not cite or discuss any case law in connection with that argument. Preliminarily, we express our view that this argument is more properly described as a challenge to the inconsistency of the jury's verdict.

> The United States Supreme Court has recognized that a court's review of the evidentiary sufficiency of a particular conviction is separate from its review of inconsistent verdicts, as sufficiency review entails an assessment of whether the evidence was sufficient for the jury to convict a defendant of a particular offense and is "independent of the jury's determination that evidence on another count was insufficient." ***United States v. Powell***, 469 U.S. 57, 67, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). Thus, the Supreme Court has explicitly cautioned that sufficiency review "should not be confused with the problems caused by

---

[2] S.L. testified to performing oral sex twice. The Commonwealth's information indicated that the crimes alleged occurred between November 1, 2013, and June 15, 2014.

inconsistent verdicts." *Id.* Accordingly, in line with the high Court, we emphasize that such challenges are more appropriately characterized as challenges to the inconsistency of the jury's verdict, rather than to the sufficiency of the evidence to sustain a particular conviction.

*Commonwealth v. Moore*, 103 A.3d 1240, 1242 n.3 (Pa. 2014).

In *Moore*, our Supreme Court addressed whether a conviction for possession of an instrument of a crime ("PIC") could be upheld "when a defendant has been otherwise acquitted of related offenses involving the use of that instrument of crime[.]" *Id*. at 1241. Although the instant crimes at issue are different, we find that the analysis is analogous.

The defendant therein was charged with murder, attempted murder, and possession of an instrument of a crime, all relating to a shooting. Moore testified that he fired the gun in self-defense. The jury acquitted him of murder and attempted murder, but convicted him of PIC. Relying on *Commonwealth v. Gonzalez*, 527 A.2d 106 (Pa. 1987), a panel of this Court concluded that the jury's acquittal of the charges involving use of the firearm due to self-defense negated the criminality element of PIC. *Moore* overruled *Gonzalez*, and reiterated that factual findings should not be drawn from inconsistent verdicts:

> *Gonzalez* is in substantial tension with the line of cases which overwhelmingly permit inconsistent verdicts in a variety of contexts, as we discuss below. As a result, we accept the Commonwealth's invitation to revisit the validity of that decision.
>
> Federal and Pennsylvania courts alike have long recognized that **jury acquittals may not be interpreted as specific factual findings with regard to the evidence, as an acquittal does**

> **not definitively establish that the jury was not convinced of a defendant's guilt**. Rather, it has been the understanding of federal courts as well as the courts of this Commonwealth that an acquittal may merely show lenity on the jury's behalf, or that "the verdict may have been the result of compromise, or of a mistake on the part of the jury." *United States v. Dunn*, 284 U.S. 390, 394, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *see also Carter*, 282 A.2d at 376. Accordingly, the United States Supreme Court has instructed that courts may not make factual findings regarding jury acquittals and, thus, cannot "upset" verdicts by "speculation or inquiry into such matters." *Dunn,* 284 U.S. at 394, 52 S.Ct. 189.
>
> It is because of the inability to ascertain the rationale behind a jury's decision to acquit a defendant that the United States Supreme Court has proclaimed that "[c]onsistency in the verdict is not necessary," expressly holding that a defendant may not challenge his conviction on one count when it is inconsistent with the jury's verdict of acquittal on another count. *Id.* at 393, 52 S.Ct. 189. This principle was first articulated by the United States Supreme Court in the 1930s in *Dunn,* and was later reaffirmed by the Court in *Powell,* wherein the Court—noting that "[t]he rule established in *Dunn v. United States* has stood without exception in this court for 53 years"—rejected an appellant's request to adopt an exception to *Dunn* in cases where a defendant is acquitted of a predicate offense, but convicted of the compound offense. *Powell,* 469 U.S. at 69, 105 S.Ct. 471.

*Id*. at 1246–47 (emphasis added).

*Moore* noted that, in some particular contexts, the fact of acquittal remains relevant. However, in those cases it is because the acquittal is relevant as a matter of law, not fact. *See Commonwealth v. Magliocco*, 883 A.2d 479 (Pa. 2004) (evidence insufficient to support ethnic intimidation, which at that time required proof of a predicate offense, where jury acquitted defendant of the charged predicate offense). *Moore* emphasized that in *Magliocco*, "[i]t was the fact of the jury's acquittal—not

any factual inference drawn from the acquittal—and the statutory elements that drove our discussion." *Moore*, *supra* at 1248.

Appellant herein seeks to use the fact of acquittal as precluding a finding that Appellant's course of conduct "violat[ed] . . . Chapter 31[.]" 18 Pa.C.S. § 6101(a)(1)(i). However, that acquittal simply means, at most, that we cannot determine that IDSI crimes constituted the course of conduct for a violation of Chapter 31. It does not mean that we must further find that the jury would have similarly deemed Appellant not guilty of any **other** Chapter 31 offense. Therefore, contrary to Appellant's assertion, the jury's acquittal does not render it "impossible for any argument to prevail which posits that the oral sex as testified to by the alleged victim can serve as a sexual offense since Officer Reese was acquitted of the IDSI charge." Appellant's brief at 17. That argument seeks to attach factual significance to the acquittal, a proposition that **Moore** rejects. Inconsistent verdicts are permissible and we must recognize "its corollary that factual findings may not be inferred from a jury's acquittal." *Moore*, *supra* at 1248. We therefore must examine the sufficiency of the evidence with the notion that the jury could have credited S.L.'s testimony that she performed oral sex despite the acquittal on the IDSI charge. That mercy was theirs to give, and we cannot assume the jury determined that oral sex did not occur.

Properly characterized as a challenge to inconsistency of verdicts, we find no merit to the sufficiency challenge. The jury was entitled to find a

course of conduct from the events testified to by S.L, which included: Appellant placing his hands on her nipples, placing his hand on her vagina, asking her to perform oral sex twice, and having sex in Appellant's vehicle. The two oral sex incidents alone clearly qualify as crimes under indecent assault, as those acts constitute indecent contact as defined in the statute. Furthermore, S.L. explained that Appellant asked her to perform oral sex in connection with promises to manipulate the criminal justice system in her favor. Therefore, the jury was entitled to find that Appellant used psychological coercion, both express and implied. Hence, we agree with the Commonwealth that the evidence, when viewed in the light most favorable to it as verdict winner, sufficed to establish a finding that S.L.'s participation "was actually the product of coercion and manipulation resulting from [Appellant]'s abuse of his position as a police officer. The obvious implication in all of [Appellant]'s interactions with S.L. was that her favorable treatment by the justice system was contingent on her willingness to submit to his sexual advances." Commonwealth's brief at 9. We therefore reject Appellant's first claim.

Appellant's second issue concerns the trial court's denial of his motion to recuse. Our Supreme Court has set forth the relevant principles and considerations as follows:

> The standards for recusal are well established. It is the burden of the party requesting recusal to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially. As a general rule,

a motion for recusal is initially directed to and decided by the jurist whose impartiality is being challenged. In considering a recusal request, the jurist must first make a conscientious determination of his or her ability to assess the case in an impartial manner, free of personal bias or interest in the outcome. The jurist must then consider whether his or her continued involvement in the case creates an appearance of impropriety and/or would tend to undermine public confidence in the judiciary.

*Commonwealth v. Abu-Jamal*, 720 A.2d 79, 89 (Pa. 1998) (citations omitted).

The first portion, regarding the judge's ability to assess the case in an objective manner, is a subjective consideration on the part of the jurist that is unreviewable. The latter portion, pertaining to whether the judge's involvement in the case creates an appearance of impropriety, is an objective inquiry that we review for an abuse of discretion. *See Goodheart v. Casey*, 565 A.2d 757, 764 (Pa. 1989) (the second consideration is "whether [the judge]'s participation in the matter would give the appearance of impropriety. To perform its high function in the best way, justice must satisfy the appearance of justice.") (quotation marks and citation omitted); *Lomas v. Kravitz*, 130 A.3d 107, 136–37 (Pa.Super. 2015) (*en banc*) (Stabile, J., concurring and dissenting) (tracing development of recusal motions and appellate review thereof; "[W]hen confronted with a request for judicial recusal, due process requires more than a jurist's examination of his or her conscience for bias. Due process requires a more objective standard.").

Initially, we note that the Commonwealth filed a motion seeking an appointment of an out-of-county judge, due to the fact that Appellant frequently appeared in Fayette County courtrooms in performing his job. The Commonwealth stated that recusal "would eliminate the potential for any real or apparent conflict of interest[.]" Motion, 9/9/15, ¶ 5. That motion was denied shortly thereafter.

Appellant did not join this request. Instead, he filed his own motion for recusal almost nine months later. The sole basis for that request was as follows: "It has come to counsel's attention that the Commonwealth plans to call a witness who is a relative of President Judge Wagner during the criminal proceeding. Counsel herein believes that this would create a scenario where the Judge's impartiality could be questioned by others." Motion for Recusal, 6/1/16, at 1.

On appeal, Appellant argues that the trial court erred by failing to grant the recusal motion based on what the **Commonwealth** alleged regarding the possible appearance of impropriety. However, Appellant did not join the Commonwealth's motion, and the sole basis for Appellant's independent motion was the possible conflict caused by a witness. Appellant neither names that witness nor states that the witness actually testified. Hence, we deem this claim waived.

Moreover, we would find no error in the denial. The trial court noted that Appellant "has failed to establish any necessity for [recusal], and has

not even attempted to demonstrate that there was any impropriety, or even the appearance thereof . . . This Court had no doubts whatsoever about [its] ability to preside fairly and [impartially]." Trial Court Opinion, 3/14/17, at 3. Therefore, the trial court properly conducted the subjective inquiry regarding the judge's own ability to preside fairly, which is unreviewable. As to the latter, objective inquiry, we agree that Appellant has failed to establish any appearance of impropriety. There was no relationship between the judge and Appellant other than the fact that their paths sometimes crossed when performing their respective jobs. We would therefore find no abuse of discretion in denying the recusal motion.

Finally, Appellant's third issue alleges that the trial court abused its discretion in denying his motion for a change of venue. The motion claimed that this case received greater attention than normal in the media, thereby prejudicing the ability to select an impartial jury. The trial court denied the claim without prejudice to Appellant's ability to raise the claim later should it appear that selecting a jury proved difficult. Appellant did not renew the motion.

As with the case with recusal, our system entrusts the trial court with the initial decision on change of venue, recognizing that it "is in the best position to assess the atmosphere of the community and to judge the necessity of the requested change." *Commonwealth v. Karenbauer*, 715 A.2d 1086, 1092 (Pa. 1998) (citation omitted). A defendant must show that

"pre-trial publicity resulted in actual prejudice that prevented the impaneling of an impartial jury." ***Id***. (citation omitted). Thus, the mere existence of pre-trial publicity is not sufficient, and that is all that Appellant has established. We find no abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2018