J-A13035-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : IN THE SUPERIOR COURT OF |
| | : PENNSYLVANIA |
| Appellee | : |
| v. | : |
| | : |
| GEORGE J. TORSILIERI, | : |
| | : |
| Appellant | : No. 2300 EDA 2018 |

Appeal from the Judgment of Sentence Entered July 10, 2018
in the Court of Common Pleas of Chester County
Criminal Division at No(s): CP-15-CR-0001570-2016

BEFORE:    SHOGAN, J., NICHOLS, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:          **FILED AUGUST 16, 2019**

George Torsilieri (Appellant) appeals from his judgment of sentence imposed following his convictions for aggravated indecent assault and indecent assault.  We affirm.

On the evening of November 13, 2015, a group of four friends, including Jessica Penman, Ryan Quirk, and the Victim in this case, gathered at Penman's apartment to socialize following a dinner out together.  The friends knew each other from college and had recently graduated and begun their careers as engineers.  About 9:00 or 9:30 p.m., two of Penman's co-workers, one of whom was Appellant, arrived at the apartment.  Appellant and Victim did not know each other and had never met prior to this evening.  About a half hour later, another one of Penman's co-workers arrived.  As the seven individuals were socializing, most were drinking alcohol "casually," but Victim was not.  At about 11:30 p.m., three people left the apartment.

*Retired Senior Judge assigned to the Superior Court.

Those remaining were Appellant, Victim, Penman, and Quirk. The foursome decided to leave the apartment around 11:30 p.m. or midnight to walk to local bars. They consumed alcohol at two places until closing time at 2:00 a.m. On their way back, they stopped at 7-Eleven, where Victim bought and ate some food as the group walked back to Penman's apartment.

The trial court summarized the subsequent factual history as follows.

When they arrived back at [] Penman's apartment, [] Penman, [Appellant,] and [Victim] sat on the couch and [] Quirk sat on a recliner across from the couch. [Victim] sat on one end of the couch, [Appellant] was in the middle, and [] Penman was at the other end. While conversing with one another, [] Penman, [Victim], and [Appellant] split one glass of wine amongst themselves in order to finish the bottle that [] had [been opened] earlier [in the evening]. The group continued to socialize for approximately forty-five (45) minutes to an hour.

Leaning on the arm of the couch, away from [Appellant], [Victim] fell asleep at approximately 3:15 or 3:30 a.m. At some point, [Victim] awoke to find [Appellant] on top of her kissing her face and neck and touching her breasts under her shirt. At trial, [Victim] described being confused when she awoke and wondering where she was and who was on top of her. She thought at first that it might have been [Quirk], who was sleeping on the floor across from the couch. Then she distinguished [Appellant's] facial features and realized that it was not [] Quirk, but [Appellant] who was kissing her and fondling her breasts under her shirt.

[Victim] testified that [Appellant], without saying a word or even making eye contact with her, slid his hand in [Victim]'s jeans and digitally penetrated her. [Appellant] then brought his hips [and exposed, erect penis] up to [Victim]'s face such as to indicate that he wanted [Victim] to perform oral sex on him. [Victim] said "No." [Appellant] moved his hips away from [Victim]'s face. A few moments later he brought them [and his penis] back up to [Victim]'s face. [Victim] again said "No." [Appellant] again moved his hips away from [Victim]'s face. He

- 2 -

then "shifted down[,]" and pulled off her pants, and inserted his penis in her vagina.

[Victim] described feeling "frozen" and "paralyzed[,]" so afraid that she could[ not] move. …Quirk, who was sleeping on the floor opposite the couch, testified that he heard "making out noises" and "moaning" that "sounded like excitement, like excitement style of moaning, that someone would be enjoying sex." [Victim], however, describing [Appellant's] actions as "painful[,]" insisted instead that the sounds Quirk heard were from her saying "ow" a few times and making what she characterized as "painful breath sounds." …

[Because Appellant had not respected her saying "no" twice already, Victim did not believe he would stop the vaginal intercourse if she said "no" again.] Instead, in a "moment of clarity[,]" she asked [Appellant] whether he had a condom on … to induce [Appellant] to withdraw his penis and stop the encounter. [Appellant] did in fact withdraw. He sat up, supported by his knees, with his legs on either side of [Victim] and reached down [from the couch] to grab his pants. He pulled a condom out of the wallet in his back pocket, put it on, and then reinserted his penis into [Victim]'s vagina, continuing the sex act.

After [Appellant] climaxed, [Victim] pushed his shoulder up, swiveled her legs, got up, went into the bathroom and washed herself. She saw she was bleeding from the vagina. It was approximately 5:50 a.m. She estimated that the entire encounter lasted roughly ten (10) minutes. [Victim] then texted [her best] friend from another room, woke Penman up, and the friend whom she texted spoke to Penman by phone to tell Penman that [Victim] had just been assaulted. Penman drove [Victim] to the police station to report the assault. Before they left, [Victim] grabbed the used condom that was on the table by the couch. [Appellant] was lying on the couch with his head turned to the side so [Victim] could not tell whether he was awake or asleep.

Trial Court Opinion, 10/9/2018, at 3-6 (citations to the record omitted).

After reporting the assault to the police, Victim was examined at the hospital

by a Sexual Assault Nurse Examiner (SANE), who is trained specifically in,

- 3 -

*inter alia*, the treatment of injuries and collection and maintenance of evidence from sexual assaults.

Based on the aforementioned incident, Appellant was charged with one count of rape, two counts of aggravated indecent assault, one count of sexual assault, and two counts of indecent assault. A six-day jury trial began on June 26, 2017. At the close of the Commonwealth's case, Appellant moved for judgment of acquittal, which the trial court granted as to the charges of rape, one count of aggravated indecent assault,[1] and one count of indecent assault.[2] On July 3, 2017, the jury found Appellant guilty of aggravated indecent assault[3] and indecent assault,[4] and not guilty of sexual assault.

On November 27, 2017, the trial court sentenced Appellant to an aggregate term of imprisonment of one year minus one day to two years minus one day, to be served in county prison, followed by three years of probation. Further, Appellant was deemed work release eligible after 18 months of imprisonment, and parole eligible after 22 months.

---

[1] 18 Pa.C.S. § 3125(a)(2).

[2] 18 Pa.C.S. § 3126(a)(2).

[3] 18 Pa.C.S. § 3125(a)(1).

[4] 18 Pa.C.S. § 3126(a)(1).

Appellant filed timely a post-sentence motion on December 7, 2017, in which he challenged the discretionary aspects of his sentence and also claimed the verdict was against the weight of the evidence. On February 8, 2018, the trial court granted in part Appellant's post-sentence motion, modifying Appellant's sentence to make him work release eligible after serving 14 months of his sentence, and parole eligible after 18 months. In all other respects, Appellant's post-sentence motion was denied and dismissed.

On February 16, 2018, the Commonwealth filed a timely post-sentence motion from the trial court's February 8, 2018 judgment of sentence, arguing, *inter alia*, that the trial court erred by modifying Appellant's sentence outside the presence of the parties. On July 9, 2018, the trial court held a hearing. At the hearing, the trial court conceded the error, granted in part the Commonwealth's motion, vacated the February 8, 2018 judgment of sentence, and resentenced Appellant by imposing the same sentence that it had imposed on February 8, 2018. Order, 7/10/2018.

Meanwhile, on February 27, 2018, Appellant filed a petition to file a post-sentence motion *nunc pro tunc* from the trial court's February 8, 2018 judgment of sentence, stating therein that he was seeking to challenge the constitutionality of the Sex Offender Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.10-9799.42. The Commonwealth objected, and on March 27, 2018, the trial court granted Appellant's petition.

Appellant filed his post-sentence motion *nunc pro tunc* challenging the constitutionality of SORNA on May 18, 2018. The court heard argument on this issue at the July 9, 2018 hearing. The next day, the trial court issued an order granting Appellant's motion, finding that the registration requirements of SORNA are unconstitutional and vacating the portion of Appellant's sentence which required him to register as a sex offender.[5] Order, 7/10/2018, at 2-3.

---

[5] On July 13, 2018, the Commonwealth filed an appeal with our Supreme Court, docketed at 37 MAP 2018, pursuant to 42 Pa.C.S. § 722(7) (relating to our Supreme Court's exclusive jurisdiction of appeals from final orders of the court of common pleas in matters where the court of common pleas has held, *inter alia*, a statute unconstitutional). That appeal is pending.

While we recognize that this implicates the jurisdiction of both this Court and our Supreme Court, neither party has raised any jurisdictional issues and we believe both appeals are jurisdictionally sound. ***See*** 42 Pa.C.S. §§ 704 (relating to waiver of objections to jurisdiction); 722(7); 742 (relating to jurisdiction of Superior Court); ***Harrington v. Commonwealth Dep't of Transp.***, 763 A.2d 386, 393 (Pa. 2000) ("[S]ound jurisprudential principles warrant selectivity in the determination of issues that are not within the scope of the Court's mandate. Such reasons include allowance for the development of the questions in the common pleas and intermediate appellate courts, which is particularly beneficial where … the intermediate appellate court is possessed with special expertise in the particular substantive area of the law under review, and conservation of our own judicial resources. Accordingly, henceforth, to the extent that litigants seek review of ancillary and/or previously undecided issues in a direct appeal pursuant to [42 Pa.C.S. §]722(7), they are directed to develop reasons why such issues should be specially considered, along the lines of the guidelines stated in Pennsylvania Rule of Appellate Procedure 1114 [(relating to standards governing discretionary allowance of appeal to Pennsylvania Supreme Court)]. In the absence of such reasons, the general practice of [the Pennsylvania Supreme] Court will be to remand to the common pleas

*(Footnote Continued Next Page)*

- 6 -

This timely-filed appeal followed. Appellant and the trial court complied with Pa.R.A.P. 1925. On appeal, Appellant challenges his convictions based on both the sufficiency and weight of the evidence.

Challenges to the sufficiency of the evidence and the weight of the evidence are two distinct issues. *See Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000). Evidence is sufficient to support a verdict when it establishes each material element of the crime charged and commission of the crime by the accused beyond a reasonable doubt. *Id.* The remedy for a successful challenge to the sufficiency of evidence is a judgment of acquittal. *Id.* A challenge to the weight of the evidence, on the other hand, concedes there is sufficient evidence to sustain the verdict. *Id.* The remedy for a successful challenge to the weight of the evidence is a new trial. *Id.*

Appellant first argues that the evidence was insufficient to sustain both of his convictions because the Commonwealth failed to prove the element of nonconsent beyond a reasonable doubt. Appellant's Brief at 4, 17.

---

*(Footnote Continued)* ─────────────

court, or, where appropriate, transfer to the appropriate intermediate appellate court, for consideration of ancillary or unresolved issues."); *see also Estate of Hicks v. Dana Corp.*, 909 A.2d 29 (Pa. 2006) (affirming as to the issue of a statute's unconstitutionality, and transferring ancillary issues to Superior Court).

To address a challenge to the sufficiency of the evidence, we must determine

> whether, viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

**Commonwealth v. Gonzalez**, 109 A.3d 711, 716 (Pa. Super. 2015) (citation omitted).

Furthermore, in a sufficiency challenge, in addition to viewing the evidence in the light most favorable to the Commonwealth, we must look at "all reasonable inferences drawn" from the evidence in the light most favorable to the Commonwealth. **Commonwealth v. Wise**, 171 A.3d 784, 790 (Pa. Super. 2017). "The evidence established at trial need not preclude every possibility of innocence." **Commonwealth v. Rodriguez**, 141 A.3d 523, 525 (Pa. Super. 2016).

The relevant aggravated indecent assault statute provides as follows.

> **(a) Offenses defined.--**Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a

complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:

> (1) the person does so without the complainant's consent[.]

18 Pa.C.S. § 3125(a)(1). "[D]igital penetration of the vagina is sufficient evidence to support a conviction for aggravated indecent assault." ***Commonwealth v. Filer***, 846 A.2d 139, 141 (Pa. Super. 2004).

The relevant indecent assault statute provides as follows.

> **(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:
>
> > (1) the person does so without the complainant's consent[.]

18 Pa.C.S. § 3126(a)(1). Indecent contact is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101.

Because the statutes do not specify otherwise, the default *mens rea* of "intentionally, knowingly or recklessly"[6] applies to both offenses. 18 Pa.C.S. § 302(c).

---

[6]

> (1) A person acts intentionally with respect to a material element of an offense when:

*(Footnote Continued Next Page)*

In his statement of the questions presented, Appellant contends that

"the Commonwealth failed to establish the element of nonconsent" for the

offenses of aggravated indecent assault and indecent assault, but in the

*(Footnote Continued)* ────────────

> (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
>
> (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.
>
> (2) A person acts knowingly with respect to a material element of an offense when:
>
> (i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and
>
> (ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.
>
> (3) A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor's conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation.

18 Pa.C.S. § 302(b)(1), (2), (3); **see also** Pa. Suggested Standard Jury Instructions (Crim), §§ 15.3125A ("A defendant acts 'recklessly' with regard to an alleged victim's nonconsent if [he] consciously disregards a substantial and unjustifiable risk that the victim is not consenting to the penetration."), 15.3126A (A defendant acts 'recklessly' with regard to an alleged victim's nonconsent if he or she consciously disregards a substantial and unjustifiable risk that the victim is not consenting to the contact.").

argument section of his brief, Appellant concedes that "a reasonable jury could have found that [Victim] was not consenting to the acts." Appellant's Brief at 4, 20. Instead, Appellant focuses on the contention that the evidence was insufficient to prove that he acted knowingly or recklessly regarding Victim's nonconsent. *Id.* at 17, 20-21. In other words, Appellant contends there was insufficient evidence of the *mens rea* element to sustain both of his convictions.

Appellant waived this issue by failing to raise it in his Pa.R.A.P. 1925(b) statement or the statement of questions involved section of his brief. **See** Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the [Rule 1925(b) s]tatement … are waived."); Pa.R.A.P. 2116(a) ("No question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby."); **Commonwealth v. Lord**, 719 A.2d 306, 309 (Pa. 1998) ("Any issues not raised in a 1925(b) statement will be deemed waived"); **Commonwealth v. Kennedy**, 151 A.3d 1117, 1122 n.12 (Pa. Super. 2016) (finding sufficiency of the evidence claim waived where it was contained in the argument portion of brief, but not included in statement of questions involved); **see also** Rule 1925(b) Statement, 8/24/2018, at ¶ 16(a) (raising claim that "the Commonwealth failed to establish the element of non-consent beyond a reasonable doubt, inasmuch as there was no evidence that [Victim] did not consent to intercourse"); Appellant's Brief at 4 (same).

However, even if we were to reach the merits of this argument, Appellant would not be entitled to relief. As noted *supra*, the Commonwealth was required to prove that Appellant consciously disregarded a substantial and unjustifiable risk that Victim did not consent. Appellant argues that because Victim "did not manifest her nonconsent in some of the more commonly used ways, such as saying 'no,' 'stop,' 'I don't want to'" or in nonverbal ways such as to "get up or shift away from [Appellant] during the encounter, make physical space between them with her arms or legs or push him, or call out to a … friend," Appellant could not have acted knowingly or recklessly. Appellant's Brief at 27.

It is well-settled that, "[i]n a prosecution for sex offenses, a verdict may rest on the uncorroborated testimony of the victim." ***Commonwealth v. Cody***, 584 A.2d 992, 993 (Pa. Super. 1991) (case citation omitted); ***see also*** 18 Pa.C.S. § 3106 ("The testimony of a complainant need not be corroborated in prosecutions under this chapter[, Sexual Offenses]."). Moreover, "[t]he Commonwealth is not required to prove *mens rea* by direct evidence. Frequently such evidence is not available. In such cases, the Commonwealth may rely on circumstantial evidence." ***Commonwealth v. Beasley***, 138 A.3d 39, 48 (Pa. Super. 2016) (citation omitted). Further, a sexual offense victim is not required to resist the perpetrator. 18 Pa.C.S. § 3107.

- 12 -

In the instant case, Victim testified that she had been sleeping for about two hours when she awoke to Appellant on top of her kissing her face and neck and fondling her breasts. N.T., 6/27/2017, at 101-02, 104-08. As she was waking up to this, she was confused and moved her head back and forth to get her bearings. She testified that Appellant then "started fingering me, putting his hands inside of my vagina. …He was putting his finger or fingers, I'm not exactly sure, but inside of my vagina." *Id.* at 108. When Victim was asked by the prosecutor whether she wanted Appellant to do this, she answered "No. I was asleep." *Id.* at 109, 135-36. Victim was wearing stretchy jeans, or "jeggings," which could be pulled down without unbuttoning. *Id.* at 108. Appellant, who was up on his knees straddled over Victim, then brought his exposed, erect penis up to Victim's face, indicating he wanted oral sex, and she unequivocally said "no." *Id.* at 109-11. While Appellant did move his hips away from her face, Victim testified that "moments later he brought his hips right back to my face" and put his penis in her face for a second time. *Id.* at 110. Victim testified, "And I again said no. And then he moved his hips away and put his penis inside my vagina after that." *Id.*; *see also id.* at 111 (Victim testifying that "[h]e did back away, again didn't say anything or look me in the eyes. But then he just shifted his body down and put his penis inside of me.").

Victim testified that during this encounter, her legs were "frozen," her body was paralyzed, and she "was so afraid" that she "couldn't move." *Id.*

at 111-12. She said she felt like she was a "plank" and she "didn't move at all." *Id.* at 117. Victim never kissed Appellant back or put her hands on or around Appellant's body; she kept her arms at her side. *Id.* at 102, 104, 109, 113. At no time did Victim move her body in any way to assist Appellant in removing her pants and underwear. *Id.* at 112 (Victim confirming she did not move her hips up to allow Appellant to take her pants off more easily, or hook her thumbs in her underwear and push it down her legs). After Appellant inserted his penis inside Victim, she testified that it was painful, she said "ow" a few times, she made "painful breath sounds" and was wincing. *Id.* at 112-13.

Further, Victim testified that she had never met Appellant before that night. *Id.* at 84. During the course of the evening of November 13, 2015 and into the early morning hours of November 14, Victim testified that she did not spend any time alone with Appellant, did not dance with him, hold his hand, snuggle up to him, hold him around his waist, hug him, kiss him, tell him she wanted to have sex with him, or otherwise give any kind of indication that she was interested in any kind of sexual contact with Appellant. *Id.* at 86-87, 96-97.

Moreover, Victim testified that she was "in shock," "disgusted," "terrified," and "confused," and she described the encounter with Appellant as "awful" and "terrifying." *Id.* at 103, 105, 110, 112. Immediately afterward, Victim went to the bathroom, where she discovered she was

bleeding from her vagina. *Id.* at 120-21. She then immediately reported the incident to two friends and to police, and Victim underwent a SANE exam with a certified nurse that same morning. *Id.* at 121, 123-132.

In sum, the evidence demonstrates that Victim woke up to Appellant's sexual advances, told him "no" twice, and did not say or do anything to indicate that she was interested in sexual contact with Appellant. It is apparent that the jury credited Victim's testimony and we cannot re-weigh such evidence. *Commonwealth v. Rodriguez*, 141 A.3d at 525 (holding that the "fact-finder is free to believe all, part, or none of the evidence presented" and it "is not within the province of this Court to re-weigh the evidence and substitute our judgment for that of the fact-finder"). Further, to the extent that Appellant argues there are discrepancies between his and Quirk's testimonies and the testimony of Victim, such a challenge goes to weight, not sufficiency. *Commonwealth v. Bowen*, 55 A.3d 1254, 1262 (Pa. Super. 2012) (holding claim that factfinder should have believed Appellant's version of events over another witness's version goes to the weight, not the sufficiency of the evidence). Thus, when viewed in the light most favorable to the verdict winner, the evidence establishes sufficient support for the factfinder to infer that Appellant consciously disregarded the substantial risk that Victim did not consent, at a minimum, to Appellant's

kissing her, fondling her breasts, and digitally penetrating her vagina.[7]

Accordingly, we find the evidence sufficient to support both of Appellant's convictions.

Next, to review Appellant's challenge to the weight of the evidence for both of his convictions, the following standard is applicable.

---

[7] Appellant's contention that his acquittal by the jury on the sexual assault charge means that the jury "found that [Victim's] clear, verbal 'no' did not, in itself, render [Appellant] knowing or reckless as to [Victim's] lack of consent to 'any and all sexual activity,'" *see* Appellant's Reply Brief at 5, is without merit. Our Supreme Court has stated that "[f]ederal and Pennsylvania courts alike have long recognized that jury acquittals may not be interpreted as specific factual findings with regard to the evidence, as an acquittal does not definitively establish that the jury was not convinced of a defendant's guilt." **Commonwealth v. Moore**, 103 A.3d 1240, 1246 (Pa. 2014) (citations and quotation marks omitted).

> Rather, it has been the understanding of federal courts as well as the courts of this Commonwealth that an acquittal may merely show lenity on the jury's behalf, or that the verdict may have been the result of compromise, or of a mistake on the part of the jury. Accordingly, the United States Supreme Court has instructed that courts may not make factual findings regarding jury acquittals and, thus, cannot upset verdicts by speculation or inquiry into such matters.

*Id.* While we cannot speculate as to the jury's specific factual findings, to the extent Appellant argues that the jury's guilty and not guilty verdicts are inconsistent relating to the element of consent, it is possible the jury could have acquitted Appellant of sexual assault based on Victim's condom comment, and equally possible that it determined Victim did not consent to vaginal intercourse but acquitted him as a showing of lenity, compromise, mistake, or some other reason. As noted *supra*, Appellant's acquittal of the sexual assault charge does not mean necessarily that the jury believed he was not guilty. We simply do not know and this Court may not speculate or inquire into such matters.

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

***Commonwealth v. Izurieta***, 171 A.3d 803, 809 (Pa. Super. 2017) (citation omitted).

The trial court offered the following analysis of Appellant's weight challenge.

There is no dispute that the facts of the physical sexual contact as alleged by [Victim] occurred. [Appellant] admitted to them when he testified on his own behalf at trial and his DNA was found on the used condom. The only dispute is whether [Appellant's] physical sexual contact with [Victim] occurred with [Victim's] consent.[8]

All of [Appellant's] witnesses, with the exception of [Appellant] himself, were character witnesses. They were not present with the group of friends who gathered at [Penman's apartment] on the night of November 13-14, 2015[,] and did not witness any interaction between [Victim] and [Appellant] at that time.

Of the Commonwealth's witnesses, only [] Quirk, the sole witness who was in the room with [Victim] and [Appellant] at the time of the assault, testified that he heard sounds coming from

___

[8] As noted *supra*, Appellant concedes that a reasonable jury could find Victim did not consent. Appellant's Brief at 20.

the area of the couch that to him suggested two people having enjoyable consensual sex. However, the room was dark and he was unable to see what was happening to corroborate what he thought he audibly perceived. He also testified that he heard [Victim] say "No."

While [] Quirk testified that he had observed [Appellant] and [Victim] flirting with each other earlier in the evening, he testified that he also saw [Appellant] and [] Penman flirting with each other and that it appeared to him that [Appellant] was more interested in [Penman] than he was in [Victim].

Four of the other Commonwealth witnesses who were present during the evening of November 13, 201[5], including [Victim], contradicted [] Quirk's testimony by stating that they neither observed, nor in the case of [Victim], engaged in[] any flirtatious behavior with [Appellant].

Further, when [Victim] entered [] Penman's bedroom to alert [] Penman to what had happened to her, "she was literally shaking," as [] Penman testified, "[a]nd also her face was just very, just kind of scared and terrified." The SANE nurse examiner, Nerine Kozioski, R.N., testified that when she attempted to insert a speculum into [Victim's] vagina as part of the SANE exam, [Victim] "began to cry" and "was shaking" such that Nurse Kozioski was unable to utilize the speculum to further the examination.

… [Victim's] best friend and the person to whom [Victim] first reported the assault via text messages, testified that [Victim's] text to her shortly after the assault occurred stated "Jess's co-worker literally just raped me. I literally woke up to him inserting his penis into my vagina. It fucking hurt. And now I'm bleeding."

The overwhelming weight of the evidence supports the conclusion that [Appellant's] sexual contact with [Victim] was unwelcome and non-consensual. In any event, it is a question of credibility, which is squarely, and exclusively, within the province of the fact-finder.

The fact-finder, in this case the jury, who is free to believe all, part, or none of the evidence presented, chose to credit the testimony of [Victim] and the greater majority of those

Commonwealth witnesses able to testify regarding the behavior of [Appellant] and [Victim] on the night of November 13-14, 2015, who testified that [Victim's] interactions with [Appellant] throughout the evening and her demeanor after the sexual contact occurred were inconsistent with [Appellant's] narrative that his sexual encounter with [Victim] was welcomed and consensual. The jury rejected [Appellant's] characterization of the encounter and [] Quirk's uncorroborated auditory impressions. This does not shock the conscience of the [trial court. Appellant's] claim that the verdict is contrary to the weight of the evidence has no merit….

Trial Court Opinion, 10/9/2018, at 25-28.

Upon reconsideration of such verdict, the trial court concluded in its discretion that the verdict did not shock its sense of justice. We discern no abuse of discretion in this conclusion. *See Widmer*, 744 A.2d at 753 ("Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination[.]").

Judgment of sentence affirmed.

Judge Shogan joins this memorandum.

Judge Nichols concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.

Prothonotary

Date: 8/16/19