**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAMONT CRADLE | : | |
| | : | |
| Appellant | : | No. 1558 MDA 2022 |

Appeal from the Judgment of Sentence Entered April 21, 2022
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0001369-2020

BEFORE:  BOWES, J., STABILE, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                           **FILED: MAY 22, 2023**

Lamont Cradle appeals from his judgment of sentence of four and one-half to nine years of imprisonment followed by twelve months of reentry supervision after a jury convicted him of delivery of a controlled substance and criminal use of a communication facility.  We affirm.

The trial court offered the following summary of the history of this case:

[Appellant] was charged with counts of delivery of fentanyl and criminal use of a communication facility in Lycoming County on two separate dates:  August 30, 2019 and September 24, 2019. The deliveries were made to a police informant involved in controlled buys.  The confidential informant ("CI"), who testified at trial, was socially familiar with [Appellant].  . . .

The . . . CI testified that he was arrested for a third offense DUI in 2018.  He decided to cooperate with the police to gain some benefit on his pending case.  He eventually met with Trooper Edward Dammer in February 2019.  He told Trooper Dammer that he could buy drugs from individuals on the street as he was in an active addiction for oxycontin and heroin.  He agreed to make

controlled buys for the police. He mentioned [Appellant] as a potential seller and stated he could purchase from [Appellant].

In the September 24, 2019 transaction, the CI set up a deal to buy heroin from [Appellant], who he knew by the nickname "Mont." [Appellant] was going to sell $70 worth of heroin to the CI. [Appellant] told the CI to meet him in Lock Haven.

On this occasion, Trooper Dammer got into the backseat of the CI's vehicle and they drove to the Lock Haven area to meet "Mont," the [Appellant].

The CI corresponded with [Appellant] by cell phone text messages. Trooper Dammer photographed the text messages. [Appellant] texted the meeting place to the CI, who with Trooper Dammer in the back seat, went and picked up [Appellant].

[Appellant] got into the vehicle and sat in the front passenger seat. [Appellant] was uneasy with someone else being in the vehicle with the CI and [Appellant] instructed the CI to drive to the Weis Market in Lock Haven.

The CI and [Appellant] then left the vehicle and they went into the restroom at the Weis Market where [Appellant] sold heroin/fentanyl to the CI. Apparently, [Appellant] was uncomfortable with the fact that a third party, the trooper, observed him, and he asked the CI if he was setting [Appellant] up. Despite the uneasiness, [Appellant] completed the sale to the CI. [Appellant] then left the restroom and walked away from the CI, who returned to the vehicle.

. . . [B]oth Trooper Dammer and the CI unequivocally identified [Appellant] as "Mont" and as the individual involved in the delivery of fentanyl on September 24, 2019.

[Appellant] did not testify in his defense. On cross-examination, defense counsel elicited testimony from the CI that he was addicted to heroin and that he was getting drugs from [Appellant] in the summer of 2019 — May, June and July.

[Appellant] entered a stipulation with the Commonwealth that [Appellant] was incarcerated in the Lycoming County Prison from April 10, 2019 to July 22, 2019, to dispute the CI's assertion

that he was buying heroin from [Appellant] in the time frame from May through July 2019.

On re-direct, the CI explained that the transactions must have occurred before [Appellant] went to jail.

In defense, [Appellant] called Gregory White, who noted that [Appellant] is his nephew and they are very close. He had contact with [Appellant] in September 2019 and on November 28, 2019, for a Thanksgiving dinner.

Mr. White was shown Commonwealth Exhibit 2, a photograph of [Appellant], which the Commonwealth used at trial in identifying [Appellant]. The photograph was obtained by Trooper Dammer and was a Pennsylvania Identification photograph of [Appellant]. Trooper Dammer testified that he obtained the photograph so that they would have a photograph of who "Mont" was.

Mr. White testified that he went to a baseball game with [Appellant] in August 2019 and that on November 28, 2019 his wife took photographs of [Appellant]. [Appellant] introduced the photographs into evidence as [Appellant] Exhibits 1, 2, and 3. Mr. White testified [Appellant] was heavier in the time period of the photos and that his hair was in long dreads. The court permitted the defense to show the photographs to the jury.

Defense counsel had Mr. White examine the Commonwealth's photograph, Commonwealth Exhibit 2, and Mr. White opined that in August, September, and November of 2019, [Appellant] appeared as he was depicted in the defense photographs.

On cross-examination, Mr. White acknowledged that the individual in Commonwealth Exhibit 2, as well as defense exhibits 1, 2, and 3, were all photographs of [Appellant].

On rebuttal, the Commonwealth recalled Trooper Dammer, who testified that Commonwealth Exhibit 2 was not taken in August or September of 2019. Trooper Dammer further testified that his identification of [Appellant] was based on his observations of [Appellant]'s face when he entered the CI's vehicle. Trooper Dammer noted that [Appellant] looked directly at him and that [Appellant] was within 18 inches in fro[nt] of his face.

Trial Court Opinion, 11/4/22, at 4-7 (cleaned up).

Appellant proceeded to a jury trial on February 24, 2022. The jury convicted Appellant of one count of each offense in connection with the September delivery, but found him not guilty on the charges as to the alleged August sale. Appellant was sentenced as indicated above on April 21, 2022. On May 11, 2022, he filed an untimely post-sentence motion that the trial court subsequently deemed to be filed *nunc pro tunc*. Following oral amendment and argument, the trial court denied the motion by order filed November 4, 2022. This appeal followed.[1]

Appellant presents two questions for our consideration:

I.    Whether the Commonwealth presented sufficient evidence of all the elements of the charged offense, such that he could be proven guilty of delivery of a controlled substance beyond a reasonable doubt.

II.    Whether Appellant's conviction is against the weight of the evidence, in that the Commonwealth failed to produce physical evidence of the buy and there was insufficient circumstantial evidence.

---

[1] Pursuant to Pa.R.Crim.P. 720(B)(3)(a), Appellant's post-sentence motion was denied by operation of law on September 8, 2022, and the thirty-day appeal period began to run on that date. Appellant did not file this appeal until November 7, 2022. However, since the clerk of courts did not enter and serve an order to that effect in accordance with Pa.R.Crim.P. 720(B)(3)(c), and the trial court informed Appellant that he had thirty days after the November 4, 2022 order denying the post-sentence motion to file his appeal, we conclude that this appeal is properly before us. *See Commonwealth v. Khalil*, 806 A.2d 415, 421 (Pa.Super. 2002) (exercising jurisdiction over the merits of an appeal where a similar "breakdown of the processes of the trial court that caused [the a]ppellant's untimely appeal").

Appellant's brief at 7.

The following legal principles govern our review of Appellant's claim that the evidence was insufficient to sustain his convictions:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for a fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence received must be considered. Finally, the trier of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Haahs***, 289 A.3d 100, 104 n.2 (Pa.Super. 2022) (cleaned up).

Appellant asserts that "[i]n this case, the issue was identity, and the Commonwealth failed to produce enough circumstantial evidence to convict Appellant[.]" Appellant's brief at 15. Specifically, Appellant argues that: (1) "[t]he Commonwealth relied solely on an outdated picture in order to identify 'Mont,'" (2) Trooper Dammer did not record details of his interaction with "Mont" when they were in different parts of the same vehicle, (3) the CI alleged that he bought drugs from Appellant at a time Appellant was

incarcerated, (4) Trooper Dammer did not adequately control the controlled buy, and (5) the Commonwealth failed to connect Appellant with the phone number, car, or pre-recorded funds used in the buys. *Id*. at 13-16.

Appellant's arguments essentially suggest that the jury should have weighed the evidence differently and acquitted him because the Commonwealth did not present all conceivable forms of evidence to preclude any possibility of Appellant's innocence. Such is contrary to our standard of review. *See Haahs*, *supra* at 104 n.2.

Both the CI and Trooper Dammer, who had a full and clear opportunity to view the seller of fentanyl on September 24, 2019, identified Appellant as that man. *See* N.T. Trial, 2/24/22, at 69-70, 164-65, 178-79, 194. Additionally, Trooper Robert Williamson, who assisted in the surveillance of the September delivery, also identified Appellant as the person who got into the car with the CI and Trooper Dammer. *Id*. at 143-48.

The testimony of any one of those witnesses was sufficient evidence to establish Appellant's identity as "Mont." *See*, *e.g.*, *Commonwealth v. Johnson*, 180 A.3d 474, 481 (Pa.Super. 2018) ("[T]he uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense[.]"); *Commonwealth v. Trinidad*, 96 A.3d 1031, 1038 (Pa.Super. 2014) (observing that "a positive identification by one witness is sufficient for conviction" and rejecting challenges to identification evidence that "relate to

the weight of the evidence, not to its sufficiency"). Thus, Appellant's sufficiency challenges merit no relief.

Appellant next asserts that, even if we find that the evidence was sufficient, "the verdict was against the weight of the evidence based on [the] evidentiary flaws demonstrated in the previous argument." Appellant's brief at 18. He further posits that, since "[t]he jury clearly did not believe the circumstantial evidence based on it finding Appellant not guilty of the August 30, 2019 delivery," the guilty verdict for the September 24, 2019 delivery should shock the conscience of the court[.]" *Id*.

> The following law applies to our review of Appellant's weight claim:
>
> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Arias*, 286 A.3d 341, 352 (Pa.Super. 2022) (cleaned up). Consequently, our task is to determine whether the trial court, in rejecting Appellant's weight challenge, "abused its discretion by reaching a manifestly unreasonable judgment, misapplying the law, or basing its decision on

partiality, prejudice, bias, or ill-will." ***Commonwealth v. Clay***, 64 A.3d 1049, 1056 (Pa. 2013) (cleaned up).

The trial court observed that an acquittal as to any given charge "cannot be interpreted as a specific finding in relation to some of the evidence." Trial Court Opinion, 11/4/22, at 8 (citing, *inter alia*, ***Commonwealth v. Moore***, 103 A.3d 1240, 1246 (Pa. 2014) ("[J]ury acquittals may not be interpreted as specific factual findings with regard to the evidence, as an acquittal does not definitively establish that the jury was not convinced of a defendant's guilt. Rather, it has been the understanding of federal courts as well as the courts of this Commonwealth that an acquittal may merely show lenity on the jury's behalf, or that the verdict may have been the result of compromise, or of a mistake on the part of the jury." (cleaned up))). The court opined that the CI's identification of Appellant, additionally corroborated by Trooper Dammer as to the September delivery, was sufficient to convince it beyond a reasonable doubt as to that incident, and that the "verdict did not shock the court's conscience." ***Id***. at 9.

The trial court accurately stated the law. ***See***, ***e.g.***, ***Moore***, ***supra*** at 1246; ***Commonwealth v. Talbert***, 129 A.3d 536, 545 (Pa.Super. 2015) ("An acquittal cannot be interpreted as a specific finding in relation to some of the evidence." (cleaned up)). Furthermore, nothing in the certified record suggests that the court's failure to find its conscience shocked is a result of manifestly unreasonable judgment or an improper motive. Accordingly, we

have no cause to disturb the trial court's denial of a new trial based upon the weight of the evidence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/22/2023